Filed 4/21/16 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| WILLIAM A. DAVIS,<br><br>       Plaintiff and Appellant,<br><br>v.<br><br>FARMERS INSURANCE EXCHANGE et al.,<br><br>       Defendants and Respondents. | B257970<br>(Los Angeles County Super. Ct. No. BA398948)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |


COURT*:

It is ordered that the opinion filed March 28, 2016 be modified as follows:

page 3, line 10, the word "partial" is inserted before the word "retrial";

page 7, replace footnote 7 with the following:  "Appellant devoted a considerable portion of his opening and reply briefs to the evidence presented in the first phase of the trial, in which the jury found he was Farmers's employee.  Farmers had ample opportunity to challenge the evidence supporting that finding.  (See *Cristler v. Express Messenger Systems, Inc*. (2009) 171 Cal.App.4th 72, 78 [determination of employee status is one of fact, and appellate courts "have no authority to simply

second-guess the conclusion reached by the fact finder"].)  Moreover, Farmers had an incentive to challenge the finding, as appellant sought to revive his wage claim, the viability of which depended largely on his status as an employee.  (See Discussion, part C.)  Accordingly, there is no issue with respect to appellant's status as an employee in this appeal, and no basis for relitigating that issue when the matter returns for reconsideration of the wage claim.";

page 32, line 12, the words "it had" are deleted;

page 39, footnote 22, the following is added at the end of the footnote:  "Farmers asserts and appellant does not dispute that the loans were owed to an independent party, Farmers Insurance Group Federal Credit Union.  Whether the unpaid wages were retained by Farmers or distributed to a third party is irrelevant to appellant's claim for failure to pay wages due.";

page 43, the following is added at the end of the final paragraph:  "As Davis was found to be Farmers's employee in the first phase of the bifurcated trial and there has been no showing of error with respect to that finding, retrial of the wage claim is properly limited to second phase issues.  (See *Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 696 [Court of Appeal may order retrial on limited issues if such can be separately tried without prejudice to litigants in order to preserve the results of trial on issues as to which error has not been shown].)";

page 43, a new footnote is inserted after "shown].)" containing the following text:  "Had Farmers not invited the court's error in seeking a directed verdict on the wage claim, it would have been compelled to defend against that claim in light of the jury's finding that appellant was Farmers's employee.  We see no unfairness in limiting the retrial to issues that in the absence of the erroneous grant of a directed verdict would properly have been before the jury, thus "reliev[ing] the trial court and the parties of the unnecessary burden of relitigating issues that have been decided . . . .  (*Bullock v. Philip Morris USA, Inc., supra,* 159 Cal.App.4th at p. 696.)";

page 44, line 8, the word "partial" is inserted prior to the word "retrial";

page 44, line 10, the following phrase is added after the word "wages":  "in accordance with the views set forth in this opinion".

2

The petition for rehearing is denied.  The modification does not change the judgment.

_____

*EPSTEIN, P. J.    MANELLA, J.    WILLHITE, J.

Filed 3/28/16 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| WILLIAM A. DAVIS,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>FARMERS INSURANCE<br>EXCHANGE et al.,<br><br>      Defendants and Respondents. | B257970<br>(Los Angeles County<br>Super. Ct. No. BA398948) |

      APPEAL from an order of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge. Affirmed in part, reversed in part, and remanded, with directions.

      The Anfanger Law Office and Nancy B. Anfanger for Plaintiff and Appellant.

      Locke Lord and Stephen A. Tuggy for Defendants and Respondents.

Appellant William A. Davis brought suit against respondents Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company and Farmers New World Life Insurance Company (Farmers), contending that as a district manager for Farmers he had been wrongfully classified as an independent contractor rather than an employee, that he had been wrongfully terminated, and that Farmers had failed to pay wages due during and at the termination of his employment.

Appellant asserted a common law claim for wrongful termination in violation of public policy; he did not assert a claim under the Fair Employment and Housing Act (Gov. Code, § 12940 et seq., "FEHA"). While the case was pending, the California Supreme Court held in *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203 (*Harris*) that where an employee supports a FEHA claim by establishing that an illegitimate criterion was a substantial factor in the adverse employment decision at issue, the employer may avoid liability for damages by establishing that it would have made the same decision without the wrongful motivation. The court held, however, that other remedies might be available to a plaintiff, such as declaratory relief, injunctive relief and attorney fees.

At trial, the court instructed the jury with CACI instructions amended to reflect the holding in *Harris*. It issued a directed verdict in Farmers's favor on the wage claim. On the remaining claim for wrongful termination in violation of public policy, the jury first found that appellant was an employee. It further found that his age was a substantial motivating factor in his termination, but concluded that Farmers would have made the same termination decision for legitimate reasons. Accordingly, appellant was awarded no damages. Post-trial, appellant sought declaratory and/or injunctive relief, but the trial court denied his request for multiple reasons, both procedural and substantive. The court rejected appellant's

request for attorney fees under Code of Civil Procedure section 1021.5, concluding he did not meet the applicable criteria.

On appeal, appellant contends the trial court erred in giving instructions based on the holding in *Harris*. He further contends he was entitled to declaratory relief, injunctive relief and attorney fees. Finally, he asserts the court erred in granting a directed verdict on his wage claim. We conclude the court did not err in giving the *Harris* instructions or in denying appellant alternative relief when the jury rejected his claim for damages. However, we conclude appellant presented sufficient evidence to allow his wage claim to go to the jury. We, therefore, reverse and remand for retrial on that claim. We otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Background Facts*

Appellant became an insurance agent for Farmers in 1977. In December 1983, he entered into a "District Manager's Appointment Agreement" with Farmers.[1] Under the agreement, Farmers appointed appellant district manager of District Number 84, effective December 1, 1983, "and continuing until [the agreement is] terminated or cancelled . . . ." Farmers agreed to pay appellant "an overwrite on all business produced by Agents of, and written by the Exchanges, Mid-Century and Farmers New World Life, in the District . . . in accordance with schedules and rules adopted from time to time by [Farmers] . . . ."[2] Appellant

---

[1]    All respondents -- Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company and Farmers New World Life Insurance Company -- were parties to the agreement.

[2]    An "overwrite," sometimes called an "override," is "a commission paid to managerial personnel on sales made by subordinates." (*Naser v. Metropolitan Life Insurance Co.* (N.D. Cal. Jul. 31, 2013) Case No.: 5:10-CV-04475 EJD [2013 U.S. Dist. LEXIS 107706, *38], quoting Merriam-Webster's Collegiate Dictionary 885 (11th ed. *(Fn. continued on next page.)*

3

agreed to "recruit for appointment and train as many agents acceptable to [Farmers] as may be required to produce sales in accordance with goals and objectives established by [Farmers]"; to "actively represent [Farmers] in the conduct of the District"; to "represent no other insurer"; and to "conform to all regulations, operating principles and standards of [Farmers] . . . ."

The agreement stated that it "may be cancelled without cause by either [appellant] or [Farmers] on 30 days' written notice . . . ." At the time of termination, Farmers could elect to pay "'contract value'" to appellant, defined as the service commission overwrite paid to appellant during the six months immediately preceding the cancellation, increased by a multiplier based on the number of years of appellant's services. In October 2006, Farmers cancelled the appointment agreement, giving 30 days' notice and thereafter paid appellant a total of approximately $500,000 in a series of payments made between April 2007 and April 2009. Appellant was 57 when the agreement was terminated.

## B. *The Complaint*

In September 2008, appellant filed a complaint naming the entities that were parties to the appointment agreement.[3] The complaint alleged that Farmers exercised control over appellant's operations and that appellant was an employee of Farmers. The complaint contended that appellant, as well as a number of other district managers whose contracts were terminated at approximately the same time, were wrongfully terminated due to their age.

---

2003); see *Beaumont-Jacques v. Farmers Group, Inc*. (2013) 217 Cal.App.4th 1138, 1141.)

[3] The complaint also named another entity -- Farmers Group Inc. In April 2010, the trial court granted Farmers Group Inc.'s motion for summary judgment. Farmers Group Inc. is not a party to this appeal.

4

The complaint asserted claims for wrongful termination in violation of public policy, failure to pay wages under the Labor Code, and unfair business practices under the Unfair Competition Law (Bus. & Prof. Code, section 17200 et seq. (UCL)).[4]  In the cause of action for wrongful termination in violation of public policy, the complaint alleged that California public policy requires employers to treat all persons equally without regard to age.  It asserted that defendants violated California public policy by terminating appellant's employment.  It sought compensatory and punitive damages and attorney fees.

The cause of action for failure to pay wages alleged that defendants violated Labor Code section 200 et seq., and that Farmers failed to pay wages owed appellant, including those due immediately after his termination.

In the cause of action for violation of the UCL, the complaint alleged, among other things, that Farmers "intentionally and improperly failed to pay [required] compensation and benefits," "breached the parties' contracts and breached their fiduciary duties to [appellant]," and "discriminated against [appellant] based on his age . . . ."  In the body of the complaint and prayer for relief, appellant requested restitution of all compensation wrongfully retained by defendants, and "a temporary and permanent injunction requiring [d]efendant[s] to refrain from withholding earned and/or owed money and property from [him]."

The operative complaint at the time of trial was the Fifth Amended Complaint (5th AC).  The 5th AC asserted substantially the same claims for failure to pay wages, termination in violation of public policy and violation of the UCL,

---

[4]     The complaint also included claims for breach of oral contract, breach of joint venture agreement, breach of fiduciary duty, breach of contract, tortious interference with prospective economic relations and misrepresentation.  In April 2010, the claims for misrepresentation and tortious interference were resolved in Farmers's favor by summary adjudication.  The other claims were resolved prior to or during trial.  None of these claims is at issue in this appeal.

5

and sought essentially the same remedies.[5]  Farmers answered the 5th AC, including several affirmative defenses.  Under those entitled "Unclean Hands," "Plaintiff's Own Act," and "Justification/Privilege," the answer alleged that appellant failed to recruit and train a sufficient number of agents to meet Farmers's goals and objectives.

### C. *Motion to Amend Complaint*

In 2010, shortly before the original trial date and after the parties had completed extensive discovery, appellant moved to amend the complaint to add a claim under Labor Code section 2802, which requires an employer to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer . . . ."  Appellant contended that the claim had "always been part of the case."  The court denied the motion, stating it was untimely, and that appellant had failed to explain the delay in seeking to amend.  Appellant's subsequent motions to amend also were denied.

### D. *Trial*
#### 1. *Motion for Bifurcation*

Prior to trial, appellant moved to bifurcate the proceedings, having the jury first determine whether he was an employee or an independent contractor before addressing liability and damages.  The trial court granted the motion.  During the

---

[5]     A new detail was added to the claim for violation of the UCL:  that within "the last four years," defendants intentionally and improperly failed to pay compensation and benefits due appellant, and discriminated against him based on his age.  The 5th AC also added to the failure to pay wages claim the allegation that appellant's wages were based on the insurance policies he or his agents sold.

lengthy discussions of bifurcation, appellant's counsel never suggested there would be equitable or UCL issues remaining to be tried by the court after the jury reached its verdict.

## 2. *First Phase*

In the first phase of trial, the jury heard evidence from appellant and three other former district managers about the level of control Farmers exercised over their duties.[6] After hearing the evidence, the jury found that appellant was Farmers's employee.[7]

## 3. *Second Phase*

### a. *Evidence Pertinent to Age Discrimination Claim*

In support of his claim that he was terminated due to age discrimination, appellant presented evidence that while a district manager, he received multiple awards and commendations up to and including the year he was terminated. In each of the four previous years, the value of the insurance sold from his district went up. Appellant and other witnesses testified that it was not unusual for district managers to fail to achieve specific assigned goals, and that appellant had failed to

---

[6] Two other former district managers testified in phase one of the trial -- Frederick Howland and Timothy Crawley. Both suggested that age was a factor in their terminations, but the evidence established that Howland was terminated after sending a vulgar email, and Crawley was terminated after allowing less successful agents in his district to take credit for policies sold by other agents.

[7] Appellant devotes a considerable portion of his opening and reply briefs to the evidence presented in the first phase of the trial. Farmers did not file a cross-appeal challenging the jury's finding in appellant's favor in phase one. Accordingly, there is no issue with respect to his status as an employee. (See *Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 78 [determination of employee status is one of fact and appellate courts "have no authority to simply second-guess the conclusion reached by the fact finder"].)

7

achieve goals assigned to him in the past without being terminated or threatened with termination. Appellant testified that the goals assigned him by his supervisors -- Charles Dabelgott, the Southern California marketing manager, and Elizabeth Stella, the Southern Los Angeles Division marketing manager -- in the year prior to his termination were higher than had ever been assigned him before. He was told by the division marketing manager who preceded Stella that it looked like Dabelgott was "out to get [him]."

Appellant presented evidence that the district managers in appellant's division -- the Southern Los Angeles Division -- were older, on average, than the district managers of other divisions. Between 2005 and 2007, Farmers terminated six of the division's district managers, including appellant, most of whom were over 40.[8] In 2006, the year three district managers, including appellant, were terminated or forced to resign, the division won an award for the highest sales and recruiting in California.

Appellant also presented evidence of general comments made by management personnel suggesting age bias. In 2003, the President of Farmers talked about the importance of replacing "old tools" with "new tools." People in management referred to the Southern Los Angeles Division's district managers as, the "old guys," the "old farts" and the "Geritol gang." In December 2004, a Farmers executive referred to them as a "bunch of old dogs," and expressed surprise that they were doing so well. At a conference in January 2006, Farmers's chief marketing officer gave a presentation showing that the median age of the

---

[8]  Glenn Smith, a former Southern Los Angeles Division district manager testified on appellant's behalf. Smith, who was in his 60's, was discharged in 2011, five years after appellant. He claimed to have been asked by his supervisor to retire prior to his termination, and to have been told Farmers wanted to replace him with a younger, Spanish-speaking person.

agency force was 51 or 52, and that medical premiums were going up; during the presentation he said he wanted the district managers to recruit younger agents.

In its defense, Farmers presented evidence that the Southern Los Angeles Division was not doing well, that its production figures were down, and that in 2004 and 2005 it was the poorest performing division in California, as well as one of the worst in the country. Farmers established that one of the division's district managers who had been terminated around the same time as appellant was in his 40's when he became a district manager and had been a district manager for only a few years prior to his termination. Farmers also presented evidence that a district manager younger than 40 was terminated during that period due to poor performance; that Frederick Howland, an older district manager, had been terminated after sending a salacious email; that Timothy Crawley had been terminated after inflating the policy numbers for less successful agents; that some older district managers were retained; and that multiple individuals remained district managers in Southern California into their 60's and 70's.

With respect to appellant's claim that he was a good performer, Farmers presented evidence that appellant had failed to significantly expand the number of agents in his district between 1991 and 2006, had failed to achieve the goals assigned him for recruiting new agents between 2001 and 2003, and in 2005 had the second worst record among district managers in Southern California for recruiting new agents. With respect to the claim that the goals set for appellant prior to his termination were unrealistic, Farmers presented evidence that other district managers met or exceeded similar goals.

Dabelgott testified that recruitment and development of new insurance agents was a district manager's most important duty, and that when he became the Southern California marketing manager in 2003, Southern Los Angeles Division's district managers were not meeting their assigned goals in this area. In 2004, due

9

to appellant's history of poor performance in recruiting agents, the division's marketing manager who preceded Stella put appellant on a "performance program" -- a program he had to meet to retain his position. Appellant improved his recruiting numbers in 2004. However, three of the five agents appellant had recruited to meet his goals in 2004 resigned or washed out of the program within six months. In the early months of 2005, appellant recruited few new agents, and in September he was put on another performance program. By the early part of 2006, appellant was far short of the assigned goals. In March 2006, Dabelgott asked appellant to resign. Dabelgott testified he saw no reason a younger person would be able to perform the functions of a district manager better than an older person, and that he personally had appointed individuals to district manager positions when they were older than 40.

In June 2006, Stella recommended terminating appellant. She testified her recommendation was based solely on his lack of performance, and denied that appellant's age had anything to do with her decision. Bernard Shulz, who gave final approval for appellant's termination, denied considering appellant's age when making the decision. He denied ever hearing anyone in management express ageist sentiments. Shulz himself was 64 when he retired, and had been asked to stay on.

Stephen Feely, a Farmers vice president who met with appellant after his termination to discuss the reasons for it, testified that appellant did not complain of having been discriminated against because of his age. Nor did he tell Feely he had heard any managerial personnel make offensive comments. Feely had never heard anyone in management make comments about the age of the district managers in the Southern Los Angeles Division.

b. *Evidence Pertaining to Wage Claim Under Labor Code Section 200 et seq.*

Appellant presented evidence that he entered into a series of loan agreements with Farmers's credit union over the years. Farmers allowed him to repay the loans over time, deducting periodic payments from his monthly compensation. When Farmers paid appellant the contract value after he was terminated, it deducted a $293,000 balloon payment to repay the balance due on the loans. The total deducted from the final compensation checks was $302,958. This sum included reimbursement for commissions previously advanced to appellant and his agents by Farmers.

Appellant also presented evidence that the policy guide the district managers were obliged to follow required them to have a computer connected to Farmers's network. Appellant testified he was not free to buy his own computer equipment but was required to use, and incur a monthly fee for, equipment supplied by Farmers. All the data about his customers and agents was on Farmers's network, and appellant used the computer equipment for nothing other than communications with Farmers and its network. Farmers set up a Web site for appellant's office, for which it charged him a regular service fee. Appellant further testified that he was expected to buy a certain number of leads and order a certain number of promotional mailings from Farmers, and to pay a contribution toward Farmers's lobbying efforts. He also was required to order stationery designed and approved by Farmers for business letters. Farmers deducted the cost of these items from his regular compensation checks, as well as the cost of advertising for the district and

11

its agents in the telephone book, on the radio and on the Internet.  It also deducted the premiums for appellant's errors and omissions insurance policy.[9]

### c. *Farmers's Motion for Directed Verdict*

At the close of the second phase of trial, Farmers moved for a directed verdict on the wage claim.  Farmers contended that appellant had proffered no evidence to support his claim that Farmers had failed to pay any compensation due him, or that any of the deductions taken from his compensation was improper or unauthorized.  Farmers further contended that appellant's wage claim represented a backdoor attempt to insert a Labor Code section 2802 claim into the case.

Appellant argued that his wage claim was distinct from the Labor Code section 2802 claim he had sought unsuccessfully to add to his complaint.  He contended that under California law, any deductions taken from his compensation checks not specifically permitted by law were presumed improper, and that he had presented evidence establishing that deductions not permitted by law had been taken from his compensation.  He cited *Barnhill v. Robert Saunders & Co.* (1981) 125 Cal.App.3d 1 (*Barnhill*) for the specific proposition that it is improper for an employer to deduct a balloon loan repayment from an employee's wages when the employee is terminated.

The court granted the motion for directed verdict, taking the wage claim from the jury's consideration.  The court concluded that in the absence of a claim under Labor Code section 2802, appellant was precluded from contending that amounts were improperly deducted from his wages to pay business expenses.  The

---

[9]     According to appellant's calculations, the total deducted from his regular compensation was approximately $93,000 in 2004; approximately $103,000 in 2005; and approximately $96,000 in 2006.

12

court distinguished *Barnhill* as involving a low wage earner, whose paycheck was eviscerated by the employer's loan repayment deduction, and pointed out that although little evidence had been presented about the loans, there was no dispute that appellant had borrowed money and agreed to pay it back.

### d. *Pertinent Jury Instructions*

To guide their deliberations on appellant's remaining claim for age discrimination, the jurors were instructed in accordance with the post-*Harris* version of CACI No. 2430 that to establish a claim of discharge in violation of public policy due to age, "plaintiff must prove . . . that [his] age was a substantial motivating reason for [his] discharge." In line with CACI No. 2507, "substantial motivating reason" was defined for the jurors as "a reason that actually contributed to plaintiff's termination," that "must be more than a remote or trivial reason," but "does not have to be the only motivating reason." The court also gave CACI No. 2512: "If you find that age discrimination was a substantial motivating reason for plaintiff's discharge, you must then consider defendants' stated reason for the discharge. [¶] If you find that plaintiff's poor job performance also was a substantial motivating reason, then you must determine whether the defendants have proven that it would have discharged plaintiff anyway based on poor job performance, even if they had not also been substantially motivated by age discrimination. [¶] . . . [¶] If you find that defendants discharged plaintiff only for a discriminatory reason, you will be asked to determine the amount of damages he is entitled to recover. [¶] If, however, you find that defendants would have discharged plaintiff anyway for a non-discriminatory reason, then plaintiff will not be entitled to reinstatement, back pay or damages."

13

### e. *Jury's Special Verdict*

The jury returned the following special verdict:  Asked if appellant's age was "a substantial motivating reason" for his discharge, the jury answered, "Yes." Asked if appellant's poor job performance also was "a substantial motivating reason" for the discharge, the jury answered, "Yes." Asked if Farmers would have "discharged [appellant] anyway based on [his] poor job performance had [it] not also been substantially motivated by discrimination," the jury again answered, "Yes." Accordingly, the jury awarded appellant no damages.

### E. *Post-Trial Motions*

After the jury returned its verdict, Farmers lodged a proposed judgment, claiming to be the prevailing party and entitled to costs.  Appellant filed an objection, contending he had prevailed, in view of the jury's finding that he was misclassified as an independent contractor and that age-based discrimination was a substantial cause of his termination.  He claimed entitlement to costs under Code of Civil Procedure section 1032 and attorney fees under Code of Civil Procedure sections 1021.5.  Appellant further contended that entry of judgment was premature, as there had been no resolution of his claim for equitable relief under the UCL, and that under *Harris*, he was entitled to "declaratory and injunctive relief permanently restraining and enjoining [Farmers] from engaging in further unlawful discrimination based on age."  Appellant filed an application for an order setting a hearing or bench trial to determine whether he was entitled to equitable relief under either his claim for wrongful termination or his UCL claim.

Farmers responded to appellant's objections to its proposed judgment, asserting that because appellant had not prevailed on any cause of action tried to the jury, he could not be deemed the prevailing party.  Farmers opposed appellant's request for a further hearing, contending that appellant had forfeited his right to

14

assert the UCL claim by failing to raise any issue concerning the claim during the trial or trial setting, and by failing to ask the trial court to resolve it before presenting his legal claims to the jury under the general rule that equitable claims are to be tried before legal claims. Farmers also contended that to the extent the UCL claim was based on failure to pay wages, it was rendered moot by the directed verdict. Finally, Farmers contended that appellant was not entitled to attorney fees because he had not asserted a FEHA claim and did not meet the criteria for an award of fees under Code of Civil Procedure section 1021.5.

The court denied appellant's request to adjudicate further claims. The court concluded that because appellant's claim was not premised on a statutory violation of FEHA, he was not entitled to "declaratory relief, injunctive relief, [or] attorney fees and costs on the basis of [*Harris*]." With respect to the UCL claim, the court observed that appellant had not attempted to pursue that claim until after the trial ended, and concluded the jury's findings were insufficient to support a UCL claim. It found the jury's determination that Farmers would have discharged appellant based on his poor job performance precluded any potential for injunctive relief.

The court analyzed appellant's entitlement to attorney fees under Code of Civil Procedure section 1021.5, focusing on the three factors supporting an award of attorney fees under that provision: (a) a significant benefit, pecuniary or nonpecuniary, conferred on the general public or a large class of persons; (b) the necessity and financial burden of private enforcement; and (c) a finding that in the interest of justice, fees should not be paid out of the recovery. The court stated that the "primary effect" of appellant's discrimination claim had been the vindication of his "personal rights and economic interest," rather than those of any broader class of persons. The court further found that appellant "brought the instant action for his own economic benefit, as [he] asked the jury for damages of $3,994,790 for past economic losses; $3,212,829 for future economic losses; $1,000,000 to

15

$2,000,000 for past emotional distress; and $500,000 for future emotional distress. [Citation.]" Accordingly, the court concluded that "an award of fees under section 1021.5 would be improper." The court further found that Farmers, not appellant, was the prevailing party for purposes of recovering costs.

Judgment was entered. Farmers was awarded costs of $181,356.79. This appeal followed.

## DISCUSSION

Appellant's primary contention on appeal is that the trial court misinterpreted and misapplied the Califoria Supreme Court's decision in *Harris*, *supra*, 56 Cal.4th 203. Appellant contends that *Harris* should be limited to FEHA claims, and that a plaintiff/employee asserting a claim for the common law tort of wrongful discharge in violation of public policy should be permitted to recover if he or she establishes that an improper motive formed any part of the decision, even if the employer establishes that the plaintiff's poor job performance alone would have led to termination. Alternatively, appellant contends that if *Harris* applies to common law wrongful discharge claims, he was entitled to declaratory and/or injunctive relief and attorney fees because he successfully persuaded the jury that his age was a substantial motivating factor in connection with the discharge. As explained below, we disagree.

Additionally, appellant appeals from the trial court's grant of a directed verdict on his wage claim, contending he presented sufficient evidence to allow the claim to go to the jury. With this contention we agree, and reverse the grant of a directed verdict.

16

A. *Harris Instructions in Common Law Wrongful Discharge Claims*

In *Harris*, the plaintiff sued under FEHA, claiming she had been terminated from her employment with the defendant City because she was pregnant. (*Harris, supra,* 56 Cal.4th at p. 211.) She did not pursue a common law wrongful discharge claim. At trial, the court refused a defense instruction informing the jurors that if they found "a mix of discriminatory and legitimate motives, the City could avoid liability by proving that a legitimate motive alone would have led it to make the same decision to fire her"; the jury was instead instructed, pursuant to former CACI No. 2500, that the plaintiff was entitled to judgment if she proved that her pregnancy "was a 'motivating factor/reason for the discharge.'"[10] (*Harris, supra,* at pp. 211, 213.) The jury found that the plaintiff's pregnancy was a motivating factor in her discharge and awarded substantial damages. The trial court awarded the plaintiff attorney fees under Government Code section 12965, subdivision (b). (*Harris, supra,* at pp. 211, 213.)

The California Supreme Court held the trial court had erred in instructing the jury that an employee could prevail merely by proving that an illegitimate criterion was "*a* motivating factor." (*Harris, supra,* 56 Cal.4th at pp. 214-224, 231-232.) Focusing on FEHA's prohibition against adverse employment actions taken "'because of'" a person's race, sex, disability, sexual orientation, or other protected characteristic, the court held that to establish a claim of employment discrimination under FEHA, the employee must instead "'produce evidence sufficient to show that an illegitimate criterion was a *substantial factor* in the particular employment decision . . . .'" (*Harris, supra,* 56 Cal.4th at pp. 231, 232, quoting *Price*

---

[10]    Motivating factor was defined for the jury as "'something that moves the will and induces action even though other matters may have contributed to the taking of the action.'" (*Harris, supra,* 56 Cal.4th at p. 213.)

17

*Waterhouse v. Hopkins* (1989) 490 U.S. 228, 278 (conc. opn. of O'Connor, J.).) The court explained that FEHA does not prohibit "discrimination 'in the air'" or permit an employee to recover based on "bigoted thoughts or beliefs" or "'stray remarks'" (*Harris, supra,* at p. 231), but "prohibits discrimination that causes an employer 'to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.'" (*Id*. at p. 231, quoting § 12940, subd. (a).) "Requiring the plaintiff to show that discrimination was a *substantial* motivating factor, rather than simply *a* motivating factor, more effectively ensures that liability will not be imposed based on evidence of mere thoughts or passing statements unrelated to the disputed employment decision." (*Harris, supra,* at p. 232.) The court further held that once a plaintiff has shown discrimination was a substantial motivating factor in the employment decision, the employer may avoid liability for damages, back pay or an order of reinstatement "by proving that a legitimate motive alone would have led it to make the same decision," absent the discrimination. (*Harris, supra,* 56 Cal.4th at p. 211.)

Following the California Supreme Court's decision in *Harris*, the Judicial Council amended CACI No. 2500, applicable to claims of disparate treatment under FEHA. It now states that to establish a claim of disparate treatment, the plaintiff must prove that the improper criterion was "a substantial motivating reason" for the employer's decision to discharge or take other adverse employment action, rather than simply "a motivating . . . reason." The Judicial Council also amended CACI No. 2430, applicable to common law claims of wrongful discharge in violation of public policy; it now similarly states that to establish such a claim, the plaintiff must prove that the subject violation of public policy was "a

18

substantial motivating reason" for the plaintiff's discharge.  In line with these amendments, the Judicial Council amended CACI No. 2507 to define a "substantial motivating reason" as "more than a remote or trivial reason."  In addition, the Judicial Council added CACI No. 2512, to be given when the employer presents evidence of a legitimate reason for the adverse employment action, informing the jurors that even if they find that discrimination was a substantial motivating reason for the adverse action, if the employer establishes that the adverse action nonetheless would have been taken for legitimate reasons, "then [the plaintiff] will not be entitled to reinstatement, back pay, or damages."

As discussed, the CACI instructions, amended to conform to *Harris*, were given here.  The jury found in favor of appellant on the question whether age discrimination was a substantial motivating reason for his discharge.  However, it also found that Farmers would have discharged him in any event, based on his poor job performance.  Appellant contends that the holding in *Harris* should be confined to FEHA claims and not be applied to claims of wrongful discharge in violation of public policy.[11]

---

[11] Farmers contends appellant forfeited any issue with respect to CACI No. 2512 because he requested the instruction.  That does not accord with the record:  CACI No 2512 appears in the packet of instructions lodged by Farmers, not in the packet lodged by appellant.  Appellant requested the pre-*Harris* versions of CACI Nos. 2430 and 2507, and a special verdict that did not include the "same decision" language.

Alternatively, Farmers contends appellant "'invited error'" because his counsel acquiesced in giving CACI No. 2512.  During the debate over the form of the special verdict, appellant's counsel made his position clear:  "We don't think that the *Harris* instruction is appropriate, because this is a wrongful termination [in] violation of public policy.  The *Harris* case had to do with a statutory claim.  There hasn't been a case directing that the wrongful termination [in] violation of public policy instruction be changed."  During the discussion of jury instructions, specifically addressing CACI No. 2512, appellant's counsel similarly stated:  "It may be inapplicable.  I think it's envisioned to be given in a statutory setting where there's other remedies that would survive such as attorney fees and injunction."  The court then cautioned that it would be
*(Fn. continued on next page.)*

19

This issue whether *Harris's* reasoning applies where the sole claim is for wrongful termination in violation of public policy was addressed in *Mendoza v. Western Medical Center Santa Ana* (2014) 222 Cal.App.4th 1334, where the plaintiff claimed retaliatory termination for reporting sexual harassment, but abandoned his statutory FEHA claim before the case was submitted to the jury. (See *Mendoza v. Western Medical Center, supra,* 222 Cal.App.4th at p. 1341.) Over defense objection, the court instructed the jury that the plaintiff was required to prove his report was a "motivating reason" for his discharge, rather than "' a substantial motivating reason.'" (*Id*. at p. 1340.) The Court of Appeal concluded this was error. Acknowledging that "[t]he directions for use included with the current version of CACI No. 2430 state that '[w]hether the FEHA standard [(as explicated in *Harris*)] applies to cases alleging a violation of public policy has not been addressed by the courts," the court concluded: "It would be nonsensical to provide a different standard of causation in FEHA cases and common law tort cases based on public policies encompassed by FEHA. [That the plaintiff] abandoned his statutory FEHA claims before the case was submitted to the jury[,] is a distinction without a difference for purposes of crafting appropriate jury

"[p]retty risky" to fail to give the instruction and said: "You tell me which way you want me to risk." Appellant's counsel responded : "Yes, that's fine." The court said: "2512 will be given." Assuming counsel's final statement can be viewed as acquiescence in the instruction, it is insufficient to support invited error, which requires "affirmative conduct demonstrating a deliberate tactical choice on the part of the challenging party." (*Huffman v. Interstate Brands Corp.* (2004) 121 Cal.App.4th 679, 706.) "[E]xpress acceptance of an incorrect instruction is not sufficient." (*Pappert v. San Diego Gas & Electric Co.* (1982) 137 Cal.App.3d 205, 213, fn. 3; accord, *Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 743, fn. 15.) The Court of Appeal in *Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, cited by Farmers, found invited error because the appealing party "made a strategic reason to vigorously argue for the instruction [the trial court] gave . . . ." (*Id*. at p. 1007.) Appellant's counsel did not do so here.

instructions." (*Mendoza v. Western Medical Center, supra,* at p. 1341; accord, *Alamo v. Practice Management Information Corp.* (2013) 219 Cal.App.4th 466, 479 (*Alamo*) [where plaintiff asserted both a FEHA claim and a claim for termination in violation of public policy, trial court erred in giving older version of CACI No. 2430, requiring plaintiff to prove only that her pregnancy or pregnancy leave was "'a motivating reason'" rather than "'a substantial motivating reason'" for her discharge].)

We agree with the *Mendoza* and *Alamo* courts that the reasoning of *Harris* applies to claims of wrongful termination in violation of public policy as well as FEHA claims.[12] The two claims are analogous, and unless one is barred by a failure to exhaust administrative remedies or the statute of limitations, they are likely to be pursued jointly. (See *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 908 [common law wrongful discharge claim "provides another legal theory on which employees may pursue remedies comparable in all relevant respects to those . . . available to them under the FEHA" and "does not afford any different or expanded penalties for discriminatory conduct beyond those already available under the FEHA"].) Although the California Supreme Court in *Harris* focused on the statutory language of FEHA, the claim that a termination violates public policy must be "tethered to fundamental policies that are delineated in constitutional or statutory provisions." (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1095,

---

[12]     Tacitly acknowledging that the post-*Harris* version of CACI No. 2430 was properly given under *Mendoza* and *Alamo*, appellant attempts to persuade us that whether to give the mixed motive instruction (CACI No. 2512) should be subject to an independent analysis. He fails to articulate a coherent reason for applying the California Supreme Court's reasoning in *Harris* to causation, but not motivation. He contends "a wrongful termination claim against public policy does not seek to vindicate individual rights, it seeks to vindicate the right of society at large." Individual rights and societal concerns are equally vindicated by both types of claims.

overruled in part on another point in *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66.) The California Supreme Court has said that "a common law tort claim based on the public policy against age discrimination articulated in the FEHA is subject to the FEHA's limitations on the nature and scope of the statutory prohibition against age discrimination." (*Esberg v. Union Oil Co*. (2002) 28 Cal.4th 262, 272.)[13]

Moreover, on multiple occasions, the California Supreme Court has held that where a wrongful termination claim would not be cognizable under the provisions of FEHA, the conduct at issue cannot offend fundamental public policy. (See, e.g., *Silo v. CHW Medical Foundation* (2002) 27 Cal.4th 1097, 1108-1109 [where employee of religious hospital terminated for discussing another religion in the workplace was barred from pursuing FEHA claim due to statutory exemption for religious corporations, hospital could not be held liable under theory of wrongful termination in violation of public policy]; *Jennings v. Marralle* (1994) 8 Cal.4th 121, 134-135 [FEHA exemption for employers who employ fewer than five persons precluded tortious wrongful discharge claim based on public policy].) If claims for wrongful termination in violation of public policy must track FEHA, it necessarily follows that jury instructions pertinent to causation and motivation

---

[13]     See also *Stevenson v. Superior Court*, *supra*, 16 Cal.4th at p. 904 ["[W]hen a plaintiff relies upon a statutory prohibition to support a common law cause of action for wrongful termination in violation of public policy, the common law claim is subject to statutory limitations affecting the nature and scope of the statutory prohibition."]; *Estes v. Monroe* (2004) 120 Cal.App.4th 1347, 1355 ["'FEHA's provisions prohibiting discrimination may provide the policy basis for a claim for wrongful discharge in violation of public policy.' [Citations.] But the tort claim based on a violation of the FEHA is limited by the terms of the statute" and must be "tethered to the meaning of the FEHA."]

22

must be the same for both. Accordingly, we conclude the trial court did not err in giving the instructions set forth in the CACI model jury instructions.[14]

B. *Remedy for the Jury's Mixed Motive Finding*

As discussed, the jury found that appellant's age was a substantial motivating reason for his discharge, but that Farmers would have discharged appellant in any event, based on his poor job performance. The Court in *Harris* addressed the relief available where the employee meets the burden of showing that discrimination was a substantial factor motivating the adverse employment decision, but the employer shows that "it would have made the same decision in any event." (*Harris, supra,* 56 Cal.4th at p. 232.) The Court rejected the suggestion that a plaintiff under these circumstances might be entitled to an order of reinstatement or backpay: "In the context of an allegedly unlawful termination, an order of reinstatement or backpay would not 'redress the adverse effects of [discriminatory] practices on aggrieved persons' [citation,] if legitimate, nondiscriminatory reasons would have led the employer to terminate the employee

---

[14] It is clear that to be entitled to mixed-motive instructions, the employer must raise as an affirmative defense that nondiscriminatory reasons standing alone would have caused it to make the same decision. (*Harris*, *supra*, 56 Cal.4th at p. 240; *Alamo*, *supra*, 219 Cal.App.4th at pp. 481-482.) Appellant contends that Farmers did not raise a mixed-motive defense, and that he was "ambushed" by the request for mixed motive jury instructions at trial. We disagree. Farmers's answer alleged in the affirmative defenses for "Unclean Hands," "Plaintiff's Own Act" and "Justification/Privilege" that appellant's termination was justified because he neglected his district manager duties by failing to recruit and train a sufficient number of agents to meet Farmers's goals and objectives. This was sufficient to raise the defense. (See *Harris*, *supra*, at p. 240 [answer put plaintiff on notice that employer intended to defend based on having a legitimate reason for discharging her where it asserted that "'[a]ny alleged adverse employment actions of which plaintiff complains . . . were not based on plaintiff's gender and/or sex, pregnancy or any other alleged discriminatory practice, but instead were based on one or more legitimate nondiscriminatory reasons'"].)

23

in any event. Although such remedies might help to 'prevent and deter unlawful employment practices' [citation], they would do so only at the cost of awarding plaintiffs an unjustified windfall and unduly limiting the freedom of employers to make legitimate employment decisions. Curtailing employers' prerogatives in this way -- that is, forcing an employer to retain someone when it had sufficient and legitimate reasons not to do so -- would cause inefficiency and would thus tend to 'deprive[ ] the state of the fullest utilization of its capacities for development and advancement,' contrary to the FEHA's purposes. [Citation.]" (*Harris, supra,* at pp. 232-233, quoting Gov. Code, §§ 12920 & 12920.5.)

The court held that for similar reasons, the plaintiff should not be awarded damages for economic loss: "Such an award would provide the plaintiff with an unjustified windfall." (*Harris, supra,* 56 Cal.4th at p. 233.) The court reached the same conclusion with respect to monetary damages for noneconomic loss: "When an employee is fired, and when discrimination has been shown to be a substantial factor but not a 'but for' cause, we believe it is a fair supposition that the primary reason for the discharged employee's emotional distress is the discharge itself. Such distress is not compensable under the FEHA -- indeed, compensation for such distress would be a windfall to the employee -- if the employer proves it would have fired the employee anyway for lawful reasons." (*Id*. at pp. 233-234.) In short, "a termination decision substantially motivated by discrimination is not compensable in damages under section 12940(a) when an employer makes a same-decision showing." (*Id*. at p. 234.)

The court went on to state, however, that the unavailability of damages or an order of reinstatement or backpay need not make a finding of unlawful discrimination an "empty gesture." (*Harris, supra,* 56 Cal.4th at p. 234.) Citing Code of Civil Procedure section 1060, the court stated that proof that an adverse employment decision was substantially motivated by discrimination "may warrant

24

a judicial declaration of employer wrongdoing," which in the appropriate circumstances "may serve to reaffirm the plaintiff's equal standing among [his or] her coworkers and community, and to condemn discriminatory employment policies or practices. [Citation.]." (*Ibid*.)[15] The court added that "upon a finding of unlawful discrimination, a court may grant injunctive relief where appropriate to stop discriminatory practices." (*Ibid*.; see *Aguilar v. Avis Rent A Car System, Inc*. (1999) 21 Cal.4th 121, 131.) Finally, citing Government Code section 12965, subdivision (b), the court stated: "[W]hen a plaintiff has proven unlawful discrimination, the plaintiff may be eligible for 'reasonable attorney's fees and costs.'" (*Harris*, *supra*, at p. 235.)[16]

### 1. *Declaratory and Injunctive Relief*

Citing the California Supreme Court's discussion of available remedies in *Harris*, appellant contends he was entitled to declaratory and injunctive relief under the facts presented and the jury's findings. We conclude that appellant failed to properly raise or preserve issues pertaining to these remedies, and that in any event, no effective alternative relief was available.

---

[15] Code of Civil Procedure section 1060 is the statute governing declaratory relief, and provides that "[a]ny person . . . who desires a declaration of his or her rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties . . . ."

[16] Government Code section 12965, subdivision (b) provides: "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party . . . reasonable attorney's fees and costs, including expert witness fees." The California Supreme Court has explained that in FEHA actions, "a prevailing *plaintiff* should ordinarily receive his or her costs and attorney fees unless special circumstances would render such an award unjust." (*Williams v. Chino Valley Independent Fire Dist*. (2015) 61 Cal.4th 97, 115.)

In order for a party to pursue an action for declaratory relief, the grounds for such relief must be specifically pleaded in the complaint. (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 513-514, disapproved in part on another ground in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, citing *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80; accord, *American Meat Institute v. Leeman* (2009) 180 Cal.App.4th 728, 741.) Appellant did not plead a claim for declaratory relief. Neither his original complaint nor the operative 5th AC contained a cause of action for declaratory relief; nor did he include a request for declaratory relief in the prayer. Although appellant asked for injunctive relief in connection with his UCL cause of action, the only such relief sought was "a temporary and permanent injunction requiring [d]efendant[s] to refrain from withholding earned and/or owed money and property from [him]."[17] Appellant's failure to seek declaratory or injunctive relief relevant to his wrongful termination claim precluded him from obtaining such relief. (See *Griffin Dewatering Corp. v. Northern Ins. Co. of New York* (2009) 176 Cal.App.4th 172, 210 [plaintiff must recover on causes of action set out in the complaint or obtain permission to amend to include omitted claims].)

Further, although *Harris* was decided in April 2013, almost a year prior to the trial of this matter, appellant made no attempt to amend his complaint to add a

---

[17] An unfair business practice under the UCL includes "any unlawful, unfair or fraudulent business act or practice . . . ." (Bus. & Prof. Code, § 17200.) "An employer's business practices concerning its employee are within the scope of [the act]" (*Wilkinson v. Times Mirror Corp.* (1989) 215 Cal.App.3d 1034, 1052), including practices that violate FEHA (*Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1426) and failure to pay wages due (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 177-178). A UCL action is equitable in nature, and prevailing plaintiffs are generally limited to injunctive relief and restitution. (*Bradstreet v. Wong* (2008) 161 Cal.App.4th 1440, 1458, abrogated on another ground in *Martinez v. Combs* (2010) 49 Cal.4th 35, citing *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144; see Bus. & Prof. Code, § 17203.)

26

claim for declaratory relief or to expand his request for injunctive relief to include relief relevant to his discrimination claim. Prior to trial, when the parties discussed the bifurcation motion and the order of trial, appellant neither asked the court to resolve any equitable issues first, nor suggested he intended to seek a court trial on any equitable claim following the jury trial. To the contrary, he took the position that *Harris* had no application to the issues at trial because he had not asserted a statutory claim under FEHA. In short, appellant did nothing to suggest he intended to seek injunctive relief in connection with his wrongful termination claim.

Finally, even had the trial court addressed appellant's UCL claim, the record did not support an award of injunctive relief. In order to grant injunctive relief under the UCL, "there must be a threat that the wrongful conduct will continue. 'Injunctive relief will be denied if, at the time of the order of judgment, there is no reasonable probability that the past acts complained of will recur . . . .'" (*Colgan v. Leatherman Tool Group, Inc*. (2006) 135 Cal.App.4th 663, 702; accord *Feitelberg v. Credit Suisse First Boston, LLC* (2005) 134 Cal.App.4th 997, 1012 ["'[A]n injunction must seek to prevent harm, not to punish the wrongdoer.'"]; *Madrid v. Perot Systems Corp*. (2005) 130 Cal.App.4th 440, 464-465 ["'[Injunctive relief] . . . is not a remedy designed to right completed wrongs. [Citations.]'"].) The injuries appellant suffered at the hands of Farmers are all in the past. Neither at trial nor on appeal has appellant identified any threat of real and immediate future injury to himself as a result of Farmers's employment practices. He is not employed by Farmers, and there is no reasonable likelihood he will be at any time in the future or will otherwise be in a position to be harmed by Farmers's actions.

Appellant claims an injunction is required to prevent Farmers from engaging in age discrimination against current employees. "[I]njunctive relief under the UCL is an appropriate remedy where a business has engaged in an unlawful *practice* of discriminating against older workers." (*Herr v. Nestlé U.S.A., Inc*.

27

(2003) 109 Cal.App.4th 779, 789 [affirming trial court orders enjoining Nestlé from discriminating on the basis of age in promoting employees, and directing company to issue repudiation of its earlier memorandum recommending "'hiring, identifying and developing young people to have in the long-term enough resources for future management'"], italics added.) Appellant contends there was "ample evidence" that Farmers "engaged in a pattern of discrimination against older District Managers," but cites nothing in the record to support that contention. Our review of the record reveals that one other district manager, Glenn Smith, was terminated under circumstances suggestive of age discrimination -- some five years after appellant was terminated.[18] The jury made no finding that age played a part in any other employment decision by Farmers, and its verdict represents, at best, a determination that appellant's age played a non-pivotal role in his discharge. On this record, there was insufficient evidence to support issuance of an injunction forbidding Farmers from engaging in age discrimination.

### 2. *Attorney Fees*

Appellant contends the California Supreme Court's decision in *Harris* supports an award of attorney fees. In *Harris*, the court stated that when a plaintiff in a FEHA action has proven that an adverse employment decision was substantially motivated by discriminatory intent, he or she may be eligible for

---

[18] At trial, appellant identified five other district managers terminated at about the same time as he, and claimed this supported a pattern of age discrimination. According to the evidence presented, one of the district managers was under 40, one was appointed district manager while in his 40's and was terminated a few years later, one was terminated for allowing agents to take credit for policies they had not sold, and one was terminated after distributing an offensive email. The final district manager in that group, Steve Fox, was over 60 when he was terminated. Farmers presented evidence that he was terminated due to poor performance, and appellant presented no countervailing evidence.

28

attorney fees under Government Code section 12965, subdivision (b).  (*Harris, supra,* 56 Cal.4th at p. 235.)  Section 12965, subdivision (b) provides that "[i]n civil actions *brought under this section*, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney fees and costs." (Italics added.)  Appellant did not bring an action under FEHA, and nothing in *Harris* suggests its fee provision should be expanded for use outside that context. However, courts have held that Code of Civil Procedure section 1021.5 may permit an award of attorney fees in a claim is for wrongful discharge under the appropriate circumstances.  (*Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 828-829 [assistant sheriff's suit for wrongful termination "inure[d] to the benefit of the citizens and taxpayer of the county by lessening the probabilities of abuse and corruption in the sheriff's office"]; *Jabola v. Pasadena Redevelopment Agency* (1982) 125 Cal.App.3d 931, 936, disapproved of in part on another ground in *Cranston v. City of Richmond* (1985) 40 Cal.3d 755 [services of petitioner's counsel fell within meaning of private attorney general statute where proceeding not only benefitted petitioner, but also "serve[d] as a decision of general import, applicable to agencies and employees generally"]; see *Satrap v. Pacific Gas & Electric Co*. (1996) 42 Cal.App.4th 72, 76 [recognizing principle, but affirming order denying fee award]; *Luck v. Southern Pacific Transportation Co*. (1990) 218 Cal.App.3d 1, 29 [same].)  The trial court considered and rejected appellant's request for an award of attorney fees under Code of Civil Procedure section 1021.5.  We review that determination for abuse of discretion.  (*Satrap v. Pacific Gas & Electric Co*., *supra*, 42 Cal.App.4th at p. 77; *Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355.)

Under Code of Civil Procedure section 1021.5, "a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the

29

public interest . . . ." It provides "explicit statutory authorization for a 'private attorney general' attorney fee award" where the litigant vindicates a public policy resting on "Constitution or statute." (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 931.) "[E]ligibility for a section 1021.5 attorney fees is established when '(1) plaintiffs' action "has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons," and (3) "the necessity and financial burden of private enforcement are such as to make the award appropriate."'" (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214, quoting *Woodland Hills Residents Assn., Inc. v. City Council*, *supra*, 23 Cal.3d at p. 935.) The purpose of an award of attorneys' fees pursuant to section 1021.5, is to encourage suits that enforce "common interests of significant societal importance, but which do not involve any individual's financial interest to the extent necessary to encourage private litigation to enforce the right. [Citation.]" (*Beach Colony II v. California Coastal Com*. (1985) 166 Cal.App.3d 106, 114.)

The trial court's conclusion that the underlying litigation did not meet the criteria for an award of attorney fees under Code of Civil Procedure section 1021.5 was a reasonable one. The jury's verdict did not result in the enforcement of an important right affecting the public interest. Nor did it confer a significant benefit, pecuniary or nonpecuniary, on the general public or a large class of persons. Appellant established that in his position as district manager, he was treated by his managers as an employee, rather than the independent contractor Farmers claimed him to be, and that his age was a substantial motivating factor in his termination. These findings were not significant to the general public or demonstrably applicable to any other district manager or Farmers's employee. (See *Woodland Hills Residents Assn., Inc. v. City Council*, *supra*, 23 Cal.3d at pp. 939-940 [in

30

adjudicating motion for attorney fees under Code of Civil Procedure section 1021.5, trial court should take into consideration "significance of the benefit, as well as the size of the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case"].)

Assessment of the final factor -- the necessity and financial burden of private enforcement -- further supports the court's finding. Appellant's reasonable expectation of financial benefits from the litigation was sufficient to motivate him to pursue the litigation. "The financial burden of private enforcement requirement means that an award of attorney fees under section 1021.5 of the Code of Civil Procedure is only appropriate when the cost of the claimant's legal victory transcends his or her personal interest -- i.e., when the necessity for pursuing the lawsuit placed a burden on the plaintiff out of proportion to his or her individual stake in the matter." (*Luck v. Southern Pacific Transportation Co.*, *supra*, 218 Cal.App.3d at p. 30.) "Section 1021.5 was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest." (*Beach Colony II v. California Coastal Com.*, *supra,* 166 Cal.App.3d at p. 114.) "Private attorney general fees are not intended to provide insurance for litigants and counsel who misjudge the value of their case, and vigorously pursue the litigation in the expectation of recovering substantial damages, and then find that the jury's actual verdict is not commensurate with their expenditure of time and resources." (*Satrap v. Pacific Gas & Electric Co.*, *supra*, 42 Cal.App.4th at pp. 79-80.) The relevant issue is "'"the estimated value of the case at the time the vital litigation decisions were being made."'" (*Id*. at p. 79, quoting *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1414.)

As the trial court observed, appellant sought over ten million dollars in damages for his allegedly wrongful discharge. In addition, he expected to recover

31

hundreds of thousands of dollars for improper wage deductions. On this record, it was reasonable for the court to find that at every critical juncture appellant expected a substantial financial recovery, and that this was sufficient motivation to pursue the case. In view of appellant's failure to meet the criteria for attorney fees under Code of Civil Procedure section 1021.5, the trial court did not abuse its discretion in rejecting appellant's request.

     C. *Failure to Pay Wages*

Farmers treated appellant as an independent contractor, deducting from his compensation premiums for his errors and omissions insurance, as well as the cost of supplies and equipment, along with other expenses incurred in operating an insurance business. In addition, when it terminated him, it deducted a balloon payment to repay the loans it had made to him over the years and the commissions it had advanced. However, appellant established in the first phase of trial that he was Farmers's employee, not an independent contractor, as Farmers claimed. As an employee, appellant was entitled to the benefit of wage laws requiring an employer to promptly pay all wages due, and prohibiting the employer from deducting unauthorized expenses from the employee's wages, deducting for debts due the employer, or recouping advances absent the parties' express agreement. (See *Cotter v. Lyft, Inc*. (N.D. Cal. 2015) 60 F.Supp.3d 1067, 1073-1074 ["Whether a worker is classified as an employee or an independent contractor has great consequences. California law gives many benefits and protections to employees; independent contractors get virtually none."]; *Estrada v. FedEx Ground Package System, Inc*. (2007) 154 Cal.App.4th 1, 15 [drivers wrongly treated as independent contractors entitled to recover as employees under Labor Code for business expenses paid out of pocket during their employment]; *Zaremba v. Miller* (1980) 113 Cal.App.3d Supp. 1, 6 [mistaken belief that employee was

32

independent contractor did not free employer from obligations of Labor Code provision imposing penalty for failing to pay wages immediately upon discharge].) As explained below, we conclude appellant presented evidence sufficient to establish a prima facie case that deductions from the compensation Farmers paid appellant in his final years and after his termination were precluded by California law. Accordingly, the trial court erred in granting a directed verdict on his claim for unpaid wages.[19]

The wages an employer owes its employees are accorded "a special status" under California law. (*Kerr's Catering Service v. Department of Industrial Relations* (1962) 57 Cal.2d 319, 325 (*Kerr's Catering*).) Full and prompt payment of wages due an employee "is a fundamental public policy of this state." (*Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1147.) "This public policy has been expressed in the numerous statutes regulating the payment, assignment, exemption and priority of wages." (*Kerr's Catering*, *supra*, 57 Cal.2d at p. 325.) The chapter of the Labor Code governing compensation and payment of wages includes provisions requiring immediate payment of wages upon

---

[19] A motion for directed verdict may be granted "'"only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, . . . indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff . . . .'"'" (*CC-California Plaza Associates v. Paller & Goldstein* (1996) 51 Cal.App.4th 1042, 1051.) "'Unless it can be said as a matter of law, that . . . no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal . . . , the trial court is not justified in taking the case from the jury.'" (*Ibid.*, italics omitted.) "'"'"If there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of [a] verdict, the motion should be denied."'"'" (*Fountain Valley Chateau Blanc Homeowner's Assn. v. Department of Veterans Affairs* (1998) 67 Cal.App.4th 743, 751.) We review the trial court's entry of a directed verdict de novo. (*Guillory v. Hill* (2015) 233 Cal.App.4th 240, 249.)

discharge, layoff or resignation  (Lab. Code, §§ 201 & 202), requiring regular payment of wages (Lab. Code, § 204), and prohibiting an employer from insisting an employee execute a release of a claim before paying wages due (Lab. Code, § 206.5).  The Labor Code's protections are "designed to ensure that employees receive their full wages at specified intervals while employed, as well as when they are fired or quit" (*On-Line Power, Inc. v. Mazur* (2007) 149 Cal.App.4th 1079, 1085), and are applicable not only to hourly employees, but to highly-compensated executives and salespeople.  (See, e.g., *ibid.*; *Sciborski v. Pacific Bell Directory* (2012) 205 Cal.App.4th 1152, 1166; *Lindell v. Synthes USA* (E.D. Cal. Jan. 6, 2016) __ F.Supp.3d __ [2016 U.S.Dist. LEXIS 1940, at *11.)[20]  The statutes governing the employer/employee relationship are "remedial in nature" and must be liberally construed, "with an eye to promoting the worker protections they were intended to provide."  (*Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217, 227 (*Ralphs Grocery Co.*).)

Of particular pertinence here are Labor Code sections 221 and 224 which make it "unlawful for any employer to collect or receive from any employee any part of wages theretofore paid by said employer to said employee" (Lab. Code, § 221), but permit employers to "withhold or divert" a portion of an employee's wages when "required or empowered so to do by state or federal law or when a deduction is expressly authorized in writing by the employee to cover insurance

---

[20]    By the same token, wages include not just salaries earned hourly, but also bonuses, profit-sharing plans, and commissions.  (*Sciborski v. Pacific Bell Directory*, *supra*, 205 Cal.App.4th at p. 1166; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618; *Neisendorf v. Levi Strauss & Co.* (2006) 143 Cal.App.4th 509, 523; see Lab. Code, § 200, subd. (a) [defining wages as "all amounts for labor performed by employees . . . , whether the amount is fixed or ascertained [on a] commission basis"].)  In general, a wage is anything "promised as part of the compensation for employment," and it is due when "all conditions agreed to in advance . . . have been satisfied."  (*Neisendorf v. Levi Strauss & Co.*, *supra*, 143 Cal.App.4th at p. 522.)

premiums, hospital or medical dues, or other deductions not amounting to a rebate or deduction from the standard wage arrived at by collective bargaining or pursuant to wage agreement or statute . . . ." (Lab. Code, § 224.) Where, as here, no collective bargaining agreement or statute is at issue, these provisions prohibit an employer from "collecting or receiving wages that have already been earned by performance or agreed-upon requirements," unless they are (1) expressly authorized in writing by the employee, and (2) do not amount to a rebate or deduction from the standard wage set forth in the parties' agreement. (*Steinhebel v. Los Angeles Times Communications, LLC* (2005) 126 Cal.App.4th 696, 707.) Appellant's testimony appeared to concede that he agreed to at least some of the deductions taken from his compensation over the years. That fact, however, is not dispositive: "The one tool that is not available to [the employer] . . . is an employment agreement by which [it] requires its employees to consent to unlawful deductions from their wages." (*Hudgins v. Neiman Marcus Group, Inc*. (1995) 34 Cal.App.4th 1109, 1124 (*Hudgins*), italics omitted.)

Under the 1983 appointment agreement, appellant's compensation was to be based on a certain percentage of the commissions earned by the sales people working in his district. Under California law, the obligation to pay a commission may be contingent on events that occur after the sale (such as the customer returning the merchandise), and amounts advanced to the salesperson may be deducted at a later date if the contingencies are not satisfied. (See *Ralphs Grocery Co.*, *supra*, 42 Cal.4th at pp. 239-240 and cases cited therein.) The employer also may deduct expenses directly related to a sale, such as free shipping or free products offered by the salesperson to induce the sale. (See *Aguilar v. Zep* (N.D. Cal. Aug. 27, 2014) Case No. 13-CV-00563 – WHO [2014 U.S. Dist. LEXIS 120315, at *49].) However, the preconditions to earning the commission must be "clearly expressed[,] generally . . . in writing," "must relate to the sale," and

"cannot merely serve as a basis to shift the employer's cost of doing business to the employee." (*Sciborski v. Pacific Bell Directory*, *supra*, 205 Cal.App.4th at p. 1171; see *Marr v. Bank of America, N.A.* (9th Cir. 2013) 506 Fed. Appx. 661, ["Deductions from . . . commissions are permitted . . . when (1) the deductions are tied to the employee's sales rather than general business expenses, and (2) the employee agrees to the deductions by contract."]; *Aguilar v. Zep*, *supra,* [2014 U.S. Dist. LEXIS 120315, at *49] ["Even if a contract exists . . . , an employer cannot shift the cost of doing business to an employee. . . . [Where] routine business expenses that shift the cost of doing business to the employee [are deducted from the employees' commission-based compensation,] . . . [t]he fact that the [employees] consented to the practice is irrelevant."].)

This principle was first propounded by the California Supreme Court in *Kerr's Catering*. There, the employer promised a commission of 15 percent on all sales in excess of a certain minimum to the employees who sold food items from its lunch trucks, but deducted cash shortages resulting from the failure to properly charge for the sold items. The court held the deductions were improper, observing that "some cash shortages, breakage and loss of equipment are inevitable in almost any business operation" and should be borne as a "business expense," rather than deducted from a promised commission. (*Kerr's Catering, supra,* 57 Cal.2d at p. 329.) This holding was applied to managerial employees in *Quillian v. Lion Oil Company* (1979) 96 Cal.App.3d 156 (*Quillian*). There, the court found that commissions similarly calculated on sales volumes and reduced by cash and merchandise shortages improperly placed the "burden of losses" on the managers and thus violated Labor Code section 221 and other statutory provisions, even though the managers had executed written contracts agreeing to this method of salary calculation. (*Quillian*, *supra*, 96 Cal.App.3d at pp. 159-160, 163.)

More recently, in *Hudgins*, *supra*, 34 Cal.App.4th 1109, the court addressed an employer policy that promised salespersons commissions based on completed sales, but deducted on a pro rata basis returned merchandise that could not be traced to a particular sale or salesperson. The court found the policy "calls for deduction from earned commission wages of all sales associates a sum of money representing what would otherwise be business losses . . . ." (*Hudgins, supra,* at p. 1123.) The court explained that this was improper under Labor Code section 221: "[T]he Legislature has recognized the employee's dependence on wages for the necessities of life and has, consequently, disapproved of unanticipated or unpredictable deductions . . . ." (*Hudgins, supra,* at p. 1119.) "By enacting section 221, and retaining it as interpreted by the courts and [the Industrial Welfare Commission], the Legislature has prohibited employers from using self-help to take back any part of 'wages theretofore paid' to the employee, except in very narrowly defined circumstances provided by statute." (*Id*. at p. 1121.)[21]

In cases such as *Kerr's Catering*, *Quillian* and *Hudgins*, the courts' findings were based on the impermissibility of transferring to the employee, by way of wage deductions, the financial burden of business expenses that otherwise would be borne by the employer. California law also prohibits other types of wage deductions taken for the sole benefit of the employer. In *Agnew v. Cameron* (1967) 247 Cal.App.2d 619, the court rejected an employer's attempt to recoup

---

[21]    In *Ralphs Grocery Co.*, *supra*, 42 Cal.4th 217, although finding in favor of the employer in the circumstances before it, the California Supreme Court cited *Kerr's Catering*, *Quillian* and *Hudgins* with approval, stating that "statutes, regulations, and cases" prohibit an employer from "reduc[ing] individual employees' wages to increase its own retained profits" by way of "deduction, setoff, or recapture of expected wages for the purpose of saddling employees with prohibited employer costs . . . ." (*Id*. at p. 236.) The Supreme Court expressed agreement with the principle that an employer may not "create an expectation of or entitlement to a specified wage, then take deductions or contributions from that wage to reimburse [the employer] for its business costs." (*Id*. at p. 223.)

37

advances from an employee's final compensation, where the employer failed to establish the parties' agreement expressly permitted it.  In *Barnhill v. Robert Saunders & Co*., *supra*, 125 Cal.App.3d 1, the employer deducted a balloon payment from the employee's final check to recoup the balance due on a loan made to the employee a few months earlier.  (*Id*. at p. 4.)  The appellate court affirmed an award to the employee of the wages due and held that the employer was "not entitled to a setoff of debts owing it by an employee against any wages due that employee."  (*Id*. at pp. 6, 9.)  The same conclusion was reached in *California State Employees' Assn. v. State of California* (1988) 198 Cal.App.3d 374, where the employer sought to recoup an accidental overpayment of wages by deducting sums from the employees' current paychecks.  The court agreed with *Barnhill* that "wages actually earned during the current pay period are due, and the fact that the employee owed a debt to the [employer], even for a prior overpayment, does not 'affect the validity or alter the amount of the current claim' for wages earned."  (*California State Employees' Assn., supra,* 198 Cal.App.3d at p. 378; accord, *Sciborski v. Pacific Bell Directory*, *supra*, 205 Cal.App.4th at p. 1166 ["Labor Code section 221 prohibits an employer from deducting amounts from an employee's wages, even as a set-off for amounts clearly owed by the employee."]; *Phillips v. Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, 574 ["[T]here is in this state a fundamental and substantial public policy protecting an employee's wages, and that protection includes freedom from setoffs . . . ."]; see also *Kerr's Catering*, *supra*, 57 Cal.2d at p. 325 ["[An employee's wages are] . . . generally beyond the reach of claims by creditors including those of an employer"].)

Appellant presented evidence that amounts were deducted from the compensation paid him from 2004 to 2006, and from his final compensation.  He testified that the deductions fell into four basic categories:  (1) loan repayments; (2)

repayment of commissions advanced; (3) premiums for his errors and omissions insurance policy; and (4) operational expenses, such as the computer equipment he used in his office, promotional mailers and stationery, contributions toward Farmers's lobbying efforts, and advertisements.

With respect to loan repayments, the Division of Labor Standards Enforcement (DLSE) has taken the position that employers may take deductions to recover debts owed them, "provided that the amount of the deduction from any one paycheck cannot exceed the amount authorized by the employee for any such deduction, and that after making any such authorized deduction, the employee must still receive no less than the minimum wage . . . ." (DLSE Opn. Letter No. 1999.09.22-1 (Sept. 22, 1999), at p. 3.)[22] Otherwise, the employer must "pursue a civil action to recover any unpaid debt from the employee." (*Ibid*.) Farmers contends appellant authorized all the deductions taken from his compensation, but provides no citation to the record supporting this assertion. Our own review of the record reveals no evidence that appellant agreed to have a balloon payment taken from his final compensation.[23]

Similarly, with respect to commission advances, California law permits an employer to recover the excess of advances over commissions where there is an agreement in place to do so. (*Agnew v. Cameron*, *supra*, 247 Cal.App.2d at p. 622; *Koehl v. Verio, Inc*. (2006) 142 Cal.App.4th 1313, 1330.) Farmers does not direct us to any agreement permitting it to recover the advances it withheld from

---

[22]     DLSE opinion letters, "'""while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."'""" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1029.)

[23]     Neither the loan documents nor any of the other exhibits pertaining to deductions taken from appellant's compensation are included in the record provided by the parties.

appellant's final compensation, and our review of the record reveals none. (See *Agnew v. Cameron*, *supra*, at p. 624 [employer bears burden of establishing existence of agreement requiring return of advances on commissions when employee resigns].)

Farmers contends the premiums for appellant's errors and omissions policy represented a "personal expense." This is contrary to legal authority. California law directs employers to indemnify employees for all expenses and losses incurred in direct consequence of the discharge of their duties, "requir[ing] the employer not only to pay any judgment entered against the employee for conduct arising out of his employment but also to defend an employee who is sued for such conduct." (*Jacobus v. Krambo Corp.* (2000) 78 Cal.App.4th 1096, 1100.) Thus, the errors and omissions policy was for the benefit of Farmers.[24] (See *Gattuso v. Harte-Hank Shoppers, Inc.* (2007) 42 Cal.4th 554, 567-568 [recognizing California law requires employers to reimburse employees for automobile insurance expenses when vehicles are used for work]; *Estrada v. FedEx Ground Package System, Inc.*, *supra*, 154 Cal.App.4th at p. 19 [affirming trial court order requiring employer to reimburse drivers wrongly treated as independent contractors for "obtaining liability insurance"]; DLSE Opn. Letter No. 1993.02.22-3 (Feb. 22, 1993), at p. 2 [employer may not require employees to purchase automobile insurance at their own expense, as employers are liable for "losses due to accident or theft while the vehicle is being used for the purposes of the employer"].)

---

[24] Although Labor Code section 224 permits deductions "to cover insurance," that provision has been interpreted to apply to insurance for the benefit of the employee, such as medical or dental coverage. (*City of Oakland v. Hassey* (2008) 163 Cal.App.4th 1477, 1501, citing 3 Ops.Cal.Atty.Gen. 178, 179 (1944); *Lindell v. Synthes USA*, *supra*, __ F.Supp.3d at p. __ [2014 U.S. Dist. LEXIS 1940 at *50], fn. 22; DLSE, Enforcement Policies and Interpretations Manual (Jan. 2009, rev.), ¶ 11.3.3, "Allowable Deductions," p. 11-3.)

40

With respect to the remaining disputed deductions, they appear on their face to be for standard business expenses, not chargeable to an employee, even a commissioned sales employee. Farmers contends the deductions were for expenses that "increase[d] the basis on which [appellant's] commissions were calculated" and were, therefore, properly charged to him. As appellant's commissions were based on his agents selling Farmers's insurance, every additional dollar he earned represented an increase to Farmers's bottom line. A DLSE opinion letter addressing whether the expense of hiring an assistant could be charged to an insurance company's commissioned sales manager explains why such expenses are not transferable: "[Labor Code provisions] announce the long-standing policy of the State of California in regard to an employer's obligation to pay all costs his employee expends or loses in carrying out the duties of the employment. The employment of more help to either sell insurance or help with the paperwork so that others would be free to sell more insurance is . . . a 'direct consequence of the discharge of [the manager's] duties.' [¶] As is clear from the [Labor Code], under the California law, an employer may not 'pass through' the normal costs of operating a business to the employee he hires. Debiting an employee's earned wages to cover a normal operating expense of the employer is not allowed in California." (DLSE Opn. Letter No. 2000.08.01 (Aug. 1, 2000), at p. 4.) Stated succinctly: "It would appear to be axiomatic that any increase in the amount of legitimate sales made by an agent of an insurance company would normally be expected to result in an increase in the profits of the company" and therefore, "inure to the benefit of [the company]." (*Id.* at p. 3.)

Farmers contends appellant bore the burden of establishing that the expenses at issue were both "necessary" and "directly incurred in the discharge of [appellant's] duties." (Italics omitted.) We disagree. An employee seeking to recover under Labor Code section 2802 for business expenses paid out of pocket

must show that the expenditures were "necessarily expend[ed] in direct consequence of the discharge of the employee's duties." (*Grissom v. Vons Companies, Inc*. (1991) 1 Cal.App.4th 52, 57, italics omitted.) However, that burden does not apply to the wage claim presented here, where appellant established that Farmers took deductions for apparently business-related expenses directly from his paychecks. Under Labor Code sections 221 and 224, the employer bears the burden of establishing that such deductions are authorized by law. (See *Lindell v. Synthes USA*, *supra*, __ F.Supp.3d at p. __ [2016 U.S.Dist. LEXIS 1940 at *47-49] [granting employee's motion for summary judgment where employer failed to establish deductions were "permitted by any of [the] exceptions identified in [Lab. Code] section 224 (or any other statute)"].) Appellant's evidence established that certain deductions taken by Farmers appeared to be for ordinary business expenses not falling into any of the categories authorized by statute or decisional authority. With respect to each expense, he described the specific business-related purpose, and testified that it was incurred at the express instruction of Farmers.[25] That showing was sufficient to support a prima facie case.

---

[25] We reject Farmers's contentions that appellant's wage claim represents an attempt to revive the Labor Code section 2802 claim omitted from his complaint. The two claims are distinct. As explained, section 2802 permits an employee to claim reimbursement for all funds the employee establishes were necessarily and reasonably spent on employment-related duties or enhancing the employer's business; a wage claim under Labor Code sections 221 and 224 is limited to amounts deducted from the employee's compensation. We also reject Farmers's contention that appellant did not raise his wage deduction theory until after the failure of his requests to amend the complaint to add a section 2802 claim. Farmers itself cites portions of the record in which its counsel and the court acknowledged that appellant was asserting a claim for "failure to pay wages"/"deductions from [his] paycheck." Moreover, a claim for failure to pay wages appears in the original complaint and in the operative 5th AC, and during discussions of appellant's motions to amend, his counsel referenced the "hundreds of thousands of dollars, if not more" improperly taken out of appellant's compensation "because he was
*(Fn. continued on next page.)*

42

In sum, in support of his wage claim, appellant presented evidence that multiple deductions were taken from his compensation that were not clearly authorized by law. Farmers persuaded the trial court that it was entitled to a directed verdict, but fails on appeal to direct us to evidence entitling it to judgment as a matter of law. Accordingly, we conclude the court erred in granting the directed verdict. Our conclusion with respect to the wage claim necessarily revives appellant's UCL claim to the extent it is based on failure to pay wages and seeks restitution to recover such wages. (See *Cortez v. Purolator Air Filtration Products Co.*, *supra*, 23 Cal.4th at pp. 177-178.)[26]

---

treated as an independent contractor not as an employee." We further note that when appellant and his expert presented evidence of the funds deducted from his paychecks and the purposes for which these funds were spent, Farmers did not object on the ground that these matters were not at issue.

[26] Nothing in our opinion may be construed to revive the Labor Code section 2802 claim. Appellant did not appeal the trial court's denial of his motions to amend to insert that claim, and in any event, we discern no error in the court's rulings. Thus, appellant's claim that the amounts he borrowed from Farmers, or any other funds in his possession and control, were used to pay business expenses reimbursable under that provision remains foreclosed.

43

## DISPOSITION

The judgment in Farmers's favor on appellant's claim for wrongful termination is affirmed.  The court's order denying appellant attorney fees, costs, and injunctive and declaratory relief on this claim is affirmed.  The court's order granting a directed verdict on appellant's wage claim is reversed.  Absent resolution of appellant's wage claim, the court's finding that Farmers was the prevailing party entitled to costs is premature.  Accordingly, we also reverse that finding.  The matter is remanded for retrial of appellant's wage claim and the UCL claim to the extent it seeks restitution for Farmers's alleged failure to pay wages.  Each side shall bear its own costs on appeal.

**CERTIFIED FOR PUBLICATION**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

44