Filed 6/23/21  Moinuddin v. State of Cal., Dept. of Transportation CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| SHEIK MOINUDDIN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>STATE OF CALIFORNIA, DEPARTMENT OF TRANSPORTATION<br><br>    Defendant and Appellant. | B297674<br><br>(Los Angeles County Super. Ct. No. BC656161) |

APPEAL from an order of the Superior Court of Los Angeles County, Barbara M. Scheper, Judge.  Affirmed as modified and remanded with directions.

Hennig Ruiz & Singh, Rob Hennig and Shoshee Jau Hui, for Plaintiff and Appellant.

Erin E. Holbrook, Chief Counsel, Jerald M. Montoya, Deputy Chief Counsel, Razmig Khayalian, for Defendant and Appellant.

Plaintiff Sheik Moinuddin (Moinuddin) was demoted from a managerial position at defendant California Department of Transportation (Caltrans) and he unsuccessfully contested the demotion before the State Personnel Board (the Board)—without claiming the demotion had been motivated by unlawful discrimination or retaliation. Before the result of the Board proceedings was final, Moinuddin sued in court for violation of the Fair Employment and Housing Act (FEHA). He alleged his demotion was discriminatory and retaliatory (the issue he reserved raising before the Board), and he also complained about Caltrans' decisions to deny him other promotions and to remove an employee from his supervisory purview. A trial jury concluded Caltrans discriminated and retaliated against Moinuddin but awarded no damages because it found his poor job performance meant Caltrans would have taken the same actions absent the discriminatory and retaliatory motives. Though damages were unavailable, the trial court granted declaratory and injunctive relief and awarded attorney fees. We principally consider, in resolving the parties' cross-appeals, whether Moinuddin's choice to proceed before the Board precluded him from litigating his FEHA claims in court, whether the trial court erred by granting declaratory and injunctive relief, and whether there is substantial evidence Caltrans' adverse actions were partly motivated by legitimate reasons.

## I. BACKGROUND

### A. *Moinuddin's Employment and Promotion*

Moinuddin began working for Caltrans in January 1991. He started as a Transportation Engineer and was later promoted to Senior Transportation Engineer. In 2007, Moinuddin and

seven other Caltrans employees signed a formal complaint letter accusing another employee, Sameer Haddadeen (Haddadeen), of discrimination, harassment, and retaliation on the basis of race, ethnicity, and national origin. Haddadeen stopped speaking to Moinuddin after he signed the letter.

In or around 2014, Caltrans created the position of Principal Transportation Engineer in Operations (Principal TE). The person hired into the position would be on probation for a year, after which the assignment would become permanent. After a competitive application process, Moinuddin was promoted to the Principal TE position. As Principal TE, Moinuddin reported to Deputy District Director of Operations Ali Zaghari (Zaghari), who identifies as Persian-American. In his new position, Moinuddin would have supervisory responsibility over approximately 170 employees, including Haddadeen.

After Moinuddin was promoted, Haddadeen returned to work from a leave of absence, learned he would be reporting to Moinuddin, and asked Zaghari to allow him to report to Zaghari instead. Zaghari granted the request.

During Moinuddin's probationary year in the new position, Zaghari gave Moinuddin two performance reviews. Both identified areas in which Moinuddin's performance was unacceptable or needed improvement. According to Zaghari, Moinuddin was very upset when he received the first of these reviews.

In November 2015, Caltrans issued a Notice of Rejection During Probation that purported to remove Moinuddin from the Principal TE position during the probationary period, i.e., before his assignment became permanent. Caltrans later withdrew the Notice of Rejection, however, because it was untimely:

Moinuddin's probationary period had already ended before the notice issued. Caltrans then issued a Notice of Adverse Action demoting Moinuddin to his previous position of Senior Transportation Engineer; a disciplinary adverse action, at that point, was the only way for Caltrans to return Moinuddin to his prior position.

After demoting Moinuddin, Zaghari contacted a number of individuals at Caltrans, looking for someone to temporarily step into Moinuddin's former position. Homar Noroozi (Noroozi), who also identifies as of Persian descent, was the only person who initially volunteered. He served for six months and was later appointed as Principal TE.

Moinuddin subsequently applied for Principal Transportation Engineer positions in Caltrans' Division of Design and Caltrans' Division of Project Management. He was not selected for either position.

### B.     *The Administrative Action before the Board*

Moinuddin appealed his demotion to the Board, claiming in the main that there was no evidence to support the disciplinary action and Caltrans did not properly follow principles of progressive discipline. Moinuddin deliberately chose not to allege in the administrative proceedings that his demotion had been motivated by unlawful discrimination or retaliation.

Moinuddin's administrative appeal was heard by an Administrative Law Judge (ALJ) in November 2016. The ALJ, in a proposed decision, entered "conclusions of law" stating: "1. Moinuddin did not prove that there was no substantial evidence to support the demotion, or that the demotion was made in fraud or bad faith[;] 2. Moinuddin's conduct constitutes cause for

4

discipline under Government Code section 19572 subdivisions (b) (incompetency), (c) inefficiency, (d) inexcusable neglect of duty, (e) insubordination, and (t) other failure of good behavior[;] 3. The demotion is appropriate." In reaching these conclusions, the ALJ found Moinuddin had offered a promotion to an employee without obtaining clearance from the personnel office, did not draft duty statements for two positions, became argumentative with a supervisor, did not take detailed notes at a meeting as directed, did not ensure employees under his supervision submitted timesheets in a timely manner, did not facilitate a quarterly safety meeting for his staff, did not submit a monthly status report on the committees he attended each month, and did not provide a requested organizational chart. The ALJ's proposed decision also observes, in discussing why Caltrans could rely on poor job performance that occurred during Moinuddin's probationary period when later demoting him as a matter of discipline, that Moinuddin did not prove Caltrans "intended to deprive him of a benefit to which he was entitled or acted with animus."[1]

The Board adopted the ALJ's proposed decision in January 2017. Two months later, Moinuddin filed a verified petition for

---

[1] Here is the context for the ALJ's statement: "[Moinuddin] cites no authority for the argument that an employee is immune from disciplinary action for conduct that occurred during the probationary period. [Moinuddin] did not prove [Caltrans] intended to deprive him of a benefit to which he was entitled or acted with animus. Rather, [Caltrans'] decision to demote [Moinuddin] was motivated by [Moinuddin's] failure to properly complete several assignments." The decision does not otherwise elaborate on what it means by "animus."

writ of mandate appealing the Board's determination sustaining his demotion.[2]  The trial court sustained Caltrans' demurrer to the petition in January 2018.  Moinuddin appealed.  This court affirmed the trial court's ruling in July 2019.

### C.     *The FEHA Action Giving Rise to This Appeal*
#### 1.     *The complaint*

While the administrative proceedings remained ongoing, Moinuddin filed a complaint with the Department of Fair Employment and Housing and received a right to sue notice in October 2016.

The following April, Moinuddin filed a three-count civil complaint against Caltrans.  All three causes of action alleged FEHA violations: one count alleging unlawful discrimination, one count alleging retaliation, and the third alleging failure to prevent discrimination, harassment, and retaliation.  The complaint's factual allegations paralleled, in several respects, the facts that had been at issue in the administrative proceeding, i.e., Moinuddin had been promoted to Principal TE, Haddadeen had been removed from Moinuddin's supervisory chain, Moinuddin had been reprimanded for various actions he performed while serving as Principal TE, and Moinuddin was ultimately demoted. The complaint further alleged Zaghari displayed favoritism

---

[2]      Caltrans has asked us to judicially notice the Board's Resolution and Order, Moinuddin's subsequent Verified Petition for Writ of Mandate, the trial court's judgment in the mandamus proceeding, the notice of entry of that judgment and the notice of appeal, and this court's opinion affirming that judgment.  We grant Caltrans' request pursuant to Evidence Code section 452, subdivisions (c) and (d).

6

towards employees of Persian/Iranian national origin and Moinuddin feared he had lost all opportunities for career advancement due to Zaghari's actions and the Caltrans work environment.

The discrimination cause of action alleged Caltrans subjected Moinuddin to differential treatment, ostracism, and demotion based on his national origin. The retaliation cause of action alleged Moinuddin had engaged in protected activities under FEHA (making a FEHA/Equal Employment Opportunity (EEO) complaint and associating with other Caltrans employees who had engaged in FEHA protected activity) and Caltrans retaliated by taking adverse employment actions: removing Haddadeen from his supervisory chain, demoting him, and denying him promotions. The final cause of action alleged Caltrans failed to take all steps necessary to prevent discrimination, harassment, and retaliation in the workplace.

The complaint's prayer for relief sought restitution, general damages, and "all necessary and appropriate injunctive relief including reinstatement of [Moinuddin] to his former position as Principal Transportation Engineer and that Defendant Caltrans adhere to its legal obligations in providing a workplace free from retaliation."

> 2. *Caltrans' efforts to stay trial court proceedings until final resolution of the action to overturn the Board's decision*

In March 2018, months before the FEHA case went to trial, Caltrans filed an ex parte application to stay further FEHA proceedings pending our resolution of Moinuddin's appeal of the trial court's refusal to overturn the Board's decision against him.

7

The trial court denied the application without prejudice to Caltrans filing a noticed motion.  Caltrans subsequently filed a noticed motion arguing there was substantial overlap between the mandamus action and this matter, both of which concerned Moinuddin's demotion, and the mandamus proceedings (then on appeal in this court) could eventually have a preclusive effect on the FEHA case.  The trial court denied that motion and no reporter's transcript of the motion hearing is part of the record in this appeal (the record also does not otherwise reveal the reasons for the trial court's decision).

Caltrans then filed a petition for writ of supersedeas contesting the trial court's refusal to stay the FEHA trial. Caltrans' petition asked us to stay further trial court proceedings pending our resolution of his mandamus challenge to the Board's administrative decision because Caltrans believed a "final decision in the administrative action" would have "preclusive effect in the subsequent FEHA action."  Caltrans further argued that "[a]bsent a stay of the trial in the FEHA Trial Court Action, the State is prevented from raising a valid collateral estoppel defense and faces the risk of inconsistent judgments."  We denied the supersedeas petition without reaching the merits because Caltrans did not provide an adequate record for review.  (*State of California Department of Transportation v. Los Angeles Superior Court* (May 21, 2018, B289954) [nonpub. ord.].[3])

---

[3]     We take judicial notice of the record in this proceeding, including the cited order denying the supersedeas petition.

8

### 3. Trial of the FEHA case

Trial of the FEHA case proceeded as planned, and nearly two dozen witnesses testified. The testimony covered, among other things, Moinuddin's promotion of an employee who was not eligible for promotion, the timeliness of Moinuddin's submission of duty statements, the timeliness of timesheet submissions by Moinuddin's subordinates,[4] Moinuddin's failure to hold safety meetings, Moinuddin's failure to take notes at meetings he attended on Zaghari's behalf, and Moinuddin's inclusion of a third-party in a meeting regarding a workplace violence incident without obtaining approval from Human Resources.

Witnesses also testified regarding Zaghari's favoritism toward Persian-Americans. The testimony was mixed, and some witnesses testified Zaghari demonstrated favoritism by, among other things, promoting more Persian employees like Noroozi (the employee eventually appointed to the Principal TE position after Moinuddin's demotion). Other witnesses, including Noroozi himself, denied witnessing any instances in which Zaghari favored Persian employees and asserted the allegations regarding Noroozi's behavior were false.

Witnesses also testified more broadly about retaliation and discrimination at Caltrans. Khosrow Kamali, a former Caltrans employee, testified he previously filed lawsuits against Caltrans alleging retaliation and harassment involving Haddadeen and Zaghari. He also testified another supervisor, Carrie Bowen, avoided him and stated she was told not to speak to him after he

---

[4]    Witnesses testified no one in Caltrans' operations division other than Moinuddin was ever disciplined for problems related to late timesheets.

9

filed his lawsuit.  Moinuddin testified Zaghari told him not to interact with two employees who had sued Caltrans in the past.  Zaghari was later upset when Moinuddin asked one of those employees to serve as an acting office chief.  Moinuddin believed filing the lawsuit had ended his career because he had never seen anyone who filed a lawsuit against Caltrans get promoted.

In addition to Moinuddin's demotion itself, testimony at trial also covered his failure to obtain two promotions he sought after he had been demoted.  Moinuddin applied for a position in the Division of Design, where he had spent approximately six years in the early part of his career at Caltrans.  He was ranked third among the applicants and was not selected.  Moinuddin also applied for a position in the Division of Project Management, where he had two years of experience.  For that job, he was not given an opportunity to interview.

Moinuddin also presented testimony from two expert witnesses.  One, Jules Kamin, testified as an economic expert and opined about the economic harm caused by Moinuddin's demotion.  The other, Donna Duffy, testified as a human resources expert.  Duffy opined Caltrans violated its employment policies and procedures and failed to prevent and correct discrimination, harassment, and retaliation.  Duffy further opined Caltrans failed to address Moinuddin's complaints, that Moinuddin's demotion was retaliatory, and that Caltrans failed to prevent the retaliation from occurring.

Apart from the presentation of evidence, Caltrans moved for nonsuit twice during the trial proceedings.  The agency made its first motion right after Moinuddin's opening statement, arguing Moinuddin had chosen to pursue administrative remedies to challenge his demotion and his FEHA claims could

10

not proceed until he exhausted his challenge to the result in the administrative proceeding. The trial court denied the motion. Later, at the close of Moinuddin's case-in-chief, Caltrans again moved for nonsuit, arguing (1) Moinuddin had not exhausted his mandamus challenge to the Board's decision; (2) the Board had determined Moinuddin's demotion was appropriate and the Board's finding would have preclusive effect if we were to affirm the denial of mandamus relief to overturn the Board's decision; and (3) insufficient evidence supported Moinuddin's claims for discrimination and retaliation. The trial court denied this second nonsuit motion too.

### 4.     *Pertinent jury instructions*

The trial court instructed the jury on how its findings as to the motivation for the adverse actions identified by Moinuddin may impact the remedies to which Moinuddin would be entitled. After reciting that Moinuddin "claims that he was demoted because of his national origin," and Caltrans claims he "was demoted because of poor job performance," the instruction in question told the jury that if it found discrimination was a substantial motivating reason for his demotion, it was to consider Caltrans' stated reason "for the demotion." If the jury found Moinuddin's "poor job performance" was also a substantial motivating reason, it was to determine whether Caltrans had proven "it would have demoted [him] anyway at that time based on [his] alleged poor job performance . . . ." The instruction concluded by stating that if the jury found Caltrans "would have demoted . . . Moinuddin anyway at that time for alleged poor job performance" then Moinuddin would not be entitled to reinstatement, back pay, or damages.

11

The trial court also gave the jury an instruction concerning the administrative proceedings that had taken place before the Board. The instruction stated: "The State Personnel Board sustained the demotion of plaintiff Sheik Moinuddin. [¶] The State Personnel Board found that: (1) plaintiff did not prove that there was no substantial evidence to support the demotion, or that the demotion was made in fraud or bad faith; (2) plaintiff's conduct constitutes cause for discipline under Government Code section 19572, subdivisions (b) incompetency, (c) inefficiency, (d) inexcusable neglect of duty, (e) insubordination, and (t) other failure of good behavior; and (3) the demotion is appropriate. [¶] Plaintiff elected not to present evidence of his claims of discrimination and retaliation to the State Personnel Board reserving this evidence for these proceedings instead. The plaintiff has appealed the ruling of the State Personnel Board."

### 5. *The verdict*

By general verdict with special findings, the jury found for Moinuddin on all three causes of action tried: discrimination, retaliation, and failure to prevent both. The jury determined Moinuddin's "non-Persian" national origin was a "substantial motivating reason for his demotion and/or failure to promote and/or removal of duties" but also determined his "poor job performance" was also a substantial motivating reason for the "demotion and/or failure to promote and/or removal of duties."[5]

---

[5] The "demotion and/or failure to promote and/or removal of duties" language in the special findings corresponded to the three theories of FEHA liability Moinuddin advanced at trial: his demotion, the rejection of his two applications for a promotion in

12

With these mixed-motive findings, the jury was asked to answer whether Caltrans would have "demoted and/or failed to promote and/or removed duties from . . . Moinuddin anyway based on his poor job performance had [Caltrans] not also been substantially motivated by discrimination/retaliation." The jury's answer to that question was "yes," and that finding made it unnecessary for the jury to consider the remaining special verdict questions concerning an award of damages.

### 6. *Moinuddin's post-verdict motion for equitable relief*

After the jury's verdict, Moinuddin filed a motion asking the court to grant equitable relief. He argued the trial court could and should grant declaratory and injunctive relief under FEHA notwithstanding the jury's special findings.

Moinuddin urged the court to declare Caltrans violated his right to be free from national origin discrimination in the workplace, Caltrans violated his right to be free from retaliation for engaging in protected complaints of discrimination, and Caltrans failed to prevent discrimination and retaliation against him from occurring. Moinuddin also asked the court to enjoin Caltrans to refrain from unlawfully discriminating and retaliating against its employees, to develop a retaliation-specific policy for its employee handbook, to provide employee training specific to the revised policy, to post the judgment the court would enter in Caltrans District 7 (the Los Angeles-area district)

---

other Caltrans divisions after his demotion, and the removal of Haddadeen from his supervisory purview.

offices, to reform its hiring and promotion process, and to report on its compliance with these injunctive measures.

Caltrans opposed Moinuddin's motion. Caltrans argued Moinuddin could not seek declaratory relief because he did not ask for it in his complaint. Caltrans also argued Moinuddin's request for injunctive relief went beyond what he prayed for in his complaint and was in any event unwarranted for a variety of other reasons: the court could not enjoin Caltrans to, essentially, obey the law; the proposed injunctions were duplicative of the jury verdict and solely sought to redress past wrongs; the proposed injunctions interfered with defendant's preexisting legal obligations; and the proposed injunctions were impermissibly punitive and infringed on third parties' privacy rights.

The trial court held a hearing on Moinuddin's post-verdict motion and later entered a judgment granting declaratory relief and some of the injunctive relief requested. The May 2019 judgment declared Caltrans and its agents and employees had violated FEHA by discriminating against Moinuddin based on his non-Persian origin, by retaliating against him for his complaints of race discrimination, and by failing to prevent discrimination and retaliation from occurring through its conduct in removing Moinuddin's job duties, demoting Moinuddin, and denying promotions to Moinuddin. The judgment also incorporated two injunctions against Caltrans. First, it enjoined Caltrans District 7 from violating FEHA by discriminating against employees based on their national origin or retaliating against any employee who complained of discrimination or retaliation. Second, the court ordered District 7 to develop new retaliation-specific EEO procedures for its employee handbook, to train its personnel on the new policy, and to post a copy of the policy and the court's

14

judgment in this case in each office in District 7. Finding Moinuddin to be the prevailing party in the litigation, the court's judgment awarded him attorney fees and costs, in an amount to be determined.

### 7. *The post-judgment motions*

Both sides then filed post-judgment motions, all of which were denied. As pertinent for our purposes, Moinuddin's motion for judgment notwithstanding the verdict argued there was insufficient evidence to justify the adverse element of the jury's mixed-motive findings. Specifically, Moinuddin argued substantial evidence did not support the jury's findings that Moinuddin's poor job performance actually motivated the adverse employment actions or that Caltrans would have taken those actions based on his poor performance alone. The motion for new trial made substantively similar arguments.

### 8. *Moinuddin's attorney fees motion*

Moinuddin also filed a motion for attorney fees seeking hourly fees of $803,909.50 and a multiplier of 1.5 that would increase the total fee award to $1,205,864.25. He argued three factors supported the request for a multiplier: the contingent fee nature of the case, the delay in receipt of payment, and public policy encouraging trial counsel to take FEHA cases.

The trial court made reductions to the hourly fees amount (the "lodestar" in legal parlance) Moinuddin requested. The court reduced the requested hourly rates for the counsel and personnel who worked on the matter. Though finding most of the time billed reasonable and necessary, the court also disallowed some of the billed time including (1) hours billed prior to the filing of the

complaint, (2) some hours spent on jury selection and the attorney fees motion itself, (3) hours spent on pursuing writ relief; (4) paralegal hours spent on administrative tasks and (5) law clerk hours spent transporting documents to court. In finding this time was not compensable, the trial court specifically addressed tasks performed by a paralegal Yesenia Martinez and found none of her hours were compensable, observing, "[p]reparation of subpoenas, address look up, and dropping off a video at court are all administrative tasks. The court reasoned the same principle applied to work by two other paralegals. With these reductions, the lodestar amount was $610,330.

The trial court rejected Moinuddin's request to apply a multiplier to increase this recalculated lodestar amount. The court explained a multiplier was not warranted because it was a single-plaintiff discrimination case alleging just three causes of action and there had been very little discovery or pre-trial motion practice. The court acknowledged the trial was thirteen court days but noted Moinuddin had not addressed the extent to which the litigation precluded counsel from other employment. The court also highlighted Moinuddin's failure to achieve his goal of monetary damages.

## II. DISCUSSION

Some aspects of the relief the trial court ordered went too far, but we shall affirm in the main.

As to Caltrans' most consequential challenge to the judgment—the argument that the Board's decision upholding Moinuddin's demotion should have precluded any ability to prevail on his FEHA claims—the challenge fails because (1) the Board's decision was not legally final when the FEHA case was

16

tried and judgment entered, and (2) in any event, another theory of FEHA liability litigated at trial (Caltrans' rejection of Moinuddin's application for other promotions after his demotion) suffices to support the judgment, was not litigated in the Board proceedings, and is virtually uncontested in this appeal.

Caltrans' procedural challenges to the declaratory and injunctive relief awarded by the trial court succeed only in part. Caltrans is right that the award of declaratory relief must fall because Moinuddin did not ask for declaratory relief in his complaint, but the same is not true of injunctive relief, which Moinuddin did adequately request. Caltrans' substantive challenges to the trial court's injunctions are mostly, but not entirely, unmeritorious. The trial court did not abuse its discretion in enjoining Caltrans to develop and provide training on a new anti-retaliation policy and to post a copy of the court's judgment in District 7 Caltrans offices. But the trial court did overstep its authority in ordering what amounts to an "obey the law" injunction that compelled Caltrans to comply with FEHA's discrimination and retaliation protections.

The two challenges to the judgment Moinuddin raises in his cross-appeal are unmeritorious and unripe, respectively. He argues insufficient evidence supports the adverse aspect of the jury's mixed-motive findings that barred a damages award. We hold, however, there is substantial evidence of non-discriminatory and non-retaliatory reasons for excusing Moinuddin from supervising Haddadeen (the tension between the two) and for Caltrans' decision not to promote Moinuddin to the two positions he sought after his demotion (his relative lack of experience in the pertinent Caltrans divisions). Moinuddin also argues the amount of the trial court's attorney fees award was too

17

low, but that issue will have to wait. Because we have concluded some aspects of the equitable relief the trial court ordered cannot stand, we shall remand the matter to permit the trial court to revisit, if it so chooses, the amount of attorney fees awarded.

> A. *Issue Preclusion and Judicial Exhaustion Principles Did Not Bar Moinuddin from Prevailing on His FEHA Claims*

Issue preclusion, also known as collateral estoppel, prevents a party from relitigating an issue that was finally determined in a prior judicial or quasijudicial action. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) The doctrine applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id*. at 825.) Judicial exhaustion, described by our Supreme Court as a "corollary" to issue preclusion doctrine, "'may arise when a party initiates and takes to decision an administrative process—whether or not the party was required, as a matter of *administrative* exhaustion, to even begin the administrative process in the first place. Once a decision has been issued, provided that decision is of a sufficiently judicial character to support [issue preclusion], respect for the administrative decision[-]making process requires that the prospective plaintiff continue that process to completion, including exhausting any available judicial avenues for reversal of adverse findings. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 69-72 [ ].) Failure to do so will result in any quasi-judicial administrative findings achieving binding, preclusive effect and may bar further relief on the same claims.' [Citation.]"

18

(*Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 867.) These two related doctrines are intended to promote judicial economy and respect for the integrity of the judicial system while protecting litigants from harassment by vexatious litigation. (See, e.g., *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 829 (*Vandenberg*); *Basurto v. Imperial Irrigation Dist.* (2012) 211 Cal.App.4th 866, 878 (*Basurto*) ["Giving preclusive effect to prior administrative findings in appropriate cases furthers the policies underlying the collateral estoppel doctrine, in that it 'promote[s] judicial economy by minimizing repetitive litigation,' prevents 'the possibility of inconsistent judgments which may undermine the integrity of the judicial system,' and protects parties 'from being harassed by repeated litigation'"].)

We review de novo a trial court's decision to apply or forego applying preclusion doctrine. (See, e.g., *Samara v. Matar* (2017) 8 Cal.App.5th 796, 803.) Often, such review centers on whether the issues in the prior proceeding (here the administrative proceeding before the Board) and the current proceeding are identical. (See generally *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342 ["The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same"] (*Lucido*).) Here, aspects of that analysis would be difficult because, at least at some level of generality, there is overlap in the factual allegations at issue in the Board proceedings and the FEHA litigation (largely concerning the lawfulness of Moinuddin's demotion) but FEHA mixed-motive analysis means a mere finding that Moinuddin's demotion was

19

justified for poor job performance may not be dispositive.[6] (See generally *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203 (*Harris*).)

We ultimately do not need to determine whether the issues in the two proceedings were identical, however, because there is a more fundamental problem: the Board's decision was not final for preclusion and exhaustion purposes until after judgment was entered in this case. (See, e.g., *Abelson v. National Union Fire Ins. Co.* (1994) 28 Cal.App.4th 776, 787 [a judgment is not final for issue preclusion purposes while it is open to direct attack by appeal]; *Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 482-483; see also *Hollywood Circle, Inc. v. Department of Alcoholic Beverage Control* (1961) 55 Cal.2d 728, 733 [administrative decision became final for claim preclusion purposes when judgment denying the writ petition seeking to overturn the decision was affirmed on appeal].) Trial in this matter commenced in August 2018 and judgment was entered in March 2019. Moinuddin's appeal of the trial court's denial of writ relief to overturn the Board's decision, by contrast, was not resolved until July 2019. The Board's decision accordingly was not final when the FEHA case was litigated, and as Caltrans itself acknowledged in its supersedeas petition to stay

---

[6]     An assessment of whether issues were actually litigated in the Board proceedings and identical to the issues presented in Moinuddin's FEHA action is further complicated by the absence of the entire administrative record in the appellate record that Caltrans is responsible for providing.

proceedings in the trial court, that means Caltrans could not raise a valid preclusion defense.[7]

Our conclusion that preclusion and exhaustion principles do not apply and require reversal of the FEHA judgment is consistent with the chief underpinning of both doctrines: promotion of judicial economy. (*Lucido*, *supra*, 51 Cal.3d at 343; *Vandenberg*, *supra*, 21 Cal.4th at 829.) If the Board's decision had been final before the FEHA claims were litigated to conclusion, permitting the jury to resolve Moinuddin's demotion-based theory of liability may indeed have been inefficient to say the least. But judicial economy certainly is not now served by applying preclusion or exhaustion principles at this late date, after a jury verdict rendered following a thirteen-day trial.[8]

Furthermore, even if the Board's decision were final for preclusion and exhaustion purposes, reversal still would not be warranted because Moinuddin's demotion was not the sole

---

[7] As we have already mentioned, this court did not reach the merits of the supersedeas petition because Caltrans did not provide an adequate record for review.

[8] At oral argument, Caltrans cited *First N.B.S. Corp. v. Gabrielsen* (1986) 179 Cal.App.3d 1189 in arguing this court should consider the judgment in the mandamus action final for collateral estoppel purposes because it became final during the pendency of this appeal. Whatever the merits of the *First N.B.S.* decision, its pronouncement on finality is couched in permissive terms (e.g., providing the first final judgment "may" be brought to the appellate court's attention and "may" be relied on as res judicata). (*Id*. at 1195.) We decline to apply it here in light of the already discussed judicial economy concerns and Caltrans' failed opportunity to seek supersedeas review.

adverse employment action pled in the complaint and addressed at trial. Moinuddin also pled and litigated the propriety of Caltrans' decisions not to promote him in either the Division of Design or the Division of Project Management and the jury verdict's special findings expressly incorporated that theory of liability. Moinuddin's rejection for both of these promotions is not discussed in the Board's decision, Caltrans does not claim any facts concerning those rejections were at issue in the Board proceedings, and Caltrans does not now contend this theory of FEHA liability cannot support the jury's verdict. In other words, even if Caltrans were right that issue preclusion or judicial exhaustion did foreclose Moinuddin's demotion-based FEHA claims, there are still independent, essentially unchallenged grounds for affirmance.

### B. *Declaratory and Injunctive Relief*

We review the superior court's decisions to issue declaratory and injunctive relief for an abuse of discretion and defer to the court's factual findings so long as they are supported by substantial evidence. (*American Meat Institute v. Leeman* (2009) 180 Cal.App.4th 728, 741; *People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 282.)

#### 1. *No declaratory relief should have issued because Moinuddin did not ask for it in his complaint*

"A plaintiff must recover, if at all, upon a cause of action set out in the complaint, and not on some other cause of action which may be developed by the proofs." (*Griffin Dewatering Corp. v. Northern Ins. Co. of New York* (2009) 176 Cal.App.4th 172, 210.)

22

Moinuddin's complaint did not ask for declaratory relief, and that means the trial court could not properly grant it. (*Davis v. Farmers Ins. Exchange* (2016) 245 Cal.App.4th 1302, 1326 ["[The plaintiff] did not plead a claim for declaratory relief. Neither his original complaint nor the operative [complaint] contained a cause of action for declaratory relief, nor did he include a request for declaratory relief in the prayer. Although appellant asked for injunctive relief in connection with [another] cause of action, the only such relief sought was 'a temporary and permanent injunction requiring [d]efendant[s] to refrain from withholding earned and/or owed money and property from [him].' [The plaintiff's] failure to seek declaratory or injunctive relief relevant to his wrongful termination claim precluded him from obtaining such relief"] (*Davis*).)

> 2.      *The injunctive relief ordered was overbroad but largely proper*

Unlike declaratory relief as just described, Moinuddin's complaint did request injunctive relief. The prayer for relief sought "all necessary and appropriate injunctive relief including restatement of [Moinuddin] to his former position as Principal Transportation Engineer and that . . . Caltrans adhere to its legal obligations in providing a workplace free from retaliation."

Relying on *Davis*, Caltrans argues Moinuddin's prayer did not suffice to plead injunctive relief because it did not specifically identify the relief ultimately sought. *Davis*, however, does not demonstrate Moinuddin's pleading was insufficient. The plaintiff in *Davis* only requested injunctive relief in connection with an Unfair Competition Law claim he had not attempted to pursue until after the conclusion of a jury trial, and which the trial court

23

found the jury's verdict did not support. (*Davis*, *supra*, 245 Cal.App.4th at 1318, 1326.) Here, in contrast, Moinuddin's prayer both generally sought injunctive relief and specifically requested Caltrans adhere to its obligation to provide a retaliation-free workplace. Though the injunctive relief awarded by the trial court was not itemized in the complaint, the request contained in the prayer for relief (that Caltrans be enjoined to "adhere to its legal obligations in providing a workplace free from retaliation") was nevertheless sufficient to put Caltrans on notice, satisfy the demands of due process,[9] and justify appropriately tailored injunctive relief.

In one respect, the injunctive relief ordered by the trial court was not appropriately tailored. The court "permanently restrained and enjoined" Caltrans District 7 and its agents "from violating, directly or indirectly, [FEHA], Cal. Gov. Code, §§ 12940(a), 12940(h), and 12940(k), by: [¶] (a) discriminating against any employee based on his/her national origin; and [¶] (b) retaliating against employees who have made complaints of discrimination and/or retaliation." The terms of this injunction sweep too broadly.

"[A] court may not issue a broad injunction to simply obey the law, thereby subjecting a person to contempt proceedings for

---

[9]     Caltrans' argument that it was deprived of an opportunity to prepare to address the propriety of injunctive relief (by propounding discovery and preparing evidence/testimony) rings hollow on this record. At the hearing on Moinuddin's post-verdict motion for equitable relief, the court informed the parties it was willing to set the matter for further hearing and to allow the parties to present additional evidence and examine witnesses. Caltrans declined the offer.

committing at any time in the future some new violation unrelated to the original allegations," though it may "restrain the person from committing similar or related unlawful activity." (*City of Redlands v. County of San Bernardino* (2002) 96 Cal.App.4th 398, 416.)  The question of whether an injunction impermissibly requires a party to obey the law depends on the wording of the injunction and the context in which it issues.  (*Id.* at 416 [injunction prohibiting county from readopting an invalid amendment to its general plan "or any similar amendments" without first preparing an environmental impact report and complying with CEQA was not an obey the law injunction].)

*Cook v. Craig* (1976) 55 Cal.App.3d 773 provides one example of what an impermissible "obey the law" injunction looks like.  In *Cook*, the court found there was no relief available to plaintiffs who sought to compel the California Highway Patrol (CHP) to "comply with the [Administrative Procedure Act (APA)] as to every rule it effectuates, modifies or abandons in the course of performing its functions." (*Id*. at 785.)  The court noted it had no way of identifying what CHP regulations, if any, should have been promulgated pursuant to the APA.  (*Id*. at 786.)  As a result, the court's only recourse would be to order the CHP to "literally comply with the APA," even though the CHP asserted it had already complied with the law.  The court compared this to ordering the CHP to "obey all laws," an order it deemed obviously overbroad.  (*Ibid*.)

The trial court's injunction to comply with FEHA is not quite so broad as the injunction in *Cook,* but it still exceeds the bounds of what we believe was within the trial court's discretion. The court's injunction did not limit its application to any specifically offending employees, or even to the specific division of

25

Caltrans for which Moinuddin had been employed at the time. Nor did it limit the order prohibiting discrimination to Moinuddin himself, or to other employees in his division. Rather, it applied to all of District 7, prohibited all discrimination based on national origin and, enjoined all FEHA-proscribed retaliation of any kind by anyone in the district (whether direct or indirect, whatever that means) against any employee. This is overbroad, insufficiently tailored to the factual context of the case, and is tantamount to requiring Caltrans to "obey the law."

Moinuddin's argument to the contrary—that the injunction was appropriate because he was still employed by Caltrans at the time of trial and was entitled to an injunction against a recurrence of the discrimination and retaliation—is unpersuasive. The argument does not address the breadth of the injunction, which provides no specificity beyond requiring an entire district of Caltrans to comply with several broad FEHA proscriptions. That is inappropriate and this aspect of the judgment cannot stand.

We reach the opposite conclusion with respect to the balance of the injunctive relief the trial court ordered. To recapitulate, the court ordered Caltrans to develop a retaliation-specific EEO policy that would adequately protect employees from retaliation if they invoked Caltrans' EEO procedures, to train employees on the new policy, and to post the policy and a copy of the trial court's judgment in all District 7 offices. Caltrans challenges this aspect of the injunctive relief on numerous grounds, none of which is persuasive.

First, Caltrans argues the injunction was improper because it was not supported by "strong systemic statistical evidence." In support of this contention, Caltrans relies upon federal case law

26

stating, in various contexts, that statistical evidence may be used to establish a pattern or practice of discriminatory behavior. (See *International Broth. of Teamsters v. U.S.* (1977) 431 U.S. 324, 336-338; *City of Richmond v. J.A. Croson Co.* (1989) 488 U.S. 469, 509.) The cases Caltrans cites, however, do not hold that statistical evidence is required to obtain an injunction compelling Caltrans to develop an anti-retaliation policy and train its employees regarding that policy—and we see no good reason to impose such an inflexible requirement. Though Moinuddin did not present "strong systemic statistical evidence" here, the trial court's injunction was adequately supported by testimony from Moinuddin, other current and former Caltrans employees, and a Human Resources expert who opined Caltrans had failed to prevent and correct discrimination, harassment, and retaliation.

Next, Caltrans argues the retaliation policy and posting injunction is improper because it prevents "execution of a public statute by officers of the law for the public benefit" in violation of Code of Civil Procedure section 526, subdivision (b)(4) and Civil Code section 3423, subdivision (d). Caltrans cites various regulations and statutes that obligate it to promulgate policies addressing discrimination and retaliation, and to provide equal employment opportunity training and training in the prevention of harassment, discrimination, and retaliation. Though Caltrans asserts the injunctions "improperly subvert[ ]" administration of those regulations and statutes, the agency does not explain how requiring Caltrans to produce additional procedures and provide training regarding those procedures would prevent it from complying with the referenced statues. We see no conflict.

Caltrans also argues the injunction violated the separation of powers doctrine because it was overbroad, not tailored to the

27

specific facts of the case, and did not adopt the least disruptive remedy. But the law upon which Caltrans relies does not support its argument. While case law does provide "'[a] court should always strive for the least disruptive remedy adequate to its legitimate task'" (*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1476), injunctions that have been found to violate the separation of powers were much grander in scope, such as enjoining legislative bodies from fulfilling certain duties or requiring them to perform acts in contravention of duties otherwise imposed upon them. (See, e.g., *ibid.* [statewide injunction barring denial of diplomas to class of 2006 on the basis of exit exam requirement infringed on separation of powers where legislation provided the passage of the exit exam was a condition of a student's receipt of diploma].) Requiring Caltrans to produce and provide training on an anti-retaliation policy is not comparable.

Caltrans additionally argues the injunction requiring the posting of the judgment and the new retaliation policy "either restates or interferes with" statutes and regulations that require Caltrans to post documents identifying certain FEHA protections. As an initial matter, requiring the posting of additional documents does not facially restate or interfere with these duties. Further, "[t]he mere fact . . . a court may incidentally duplicate a legislative function [in issuing an injunction] does not result in a violation of the separation of powers doctrine." (*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy* (1992) 4 Cal.App.4th 963, 974-975.) To the extent that Caltrans also argues this is an improper "obey the law" injunction, that argument fails because the injunction specifically requires Caltrans to develop a certain type of policy, and to follow specific

instructions in training its employees on the policy and posting it in its offices. It does not broadly require Caltrans to "obey the law."

Finally, Caltrans asserts the retaliation policy and posting injunction is improper because the trial focused solely on Zaghari as the Deputy District Director of Operations, while the injunction applies to every division and office within Caltrans District 7. This ignores some of the evidence presented at trial. Though Zaghari was a central focus of the trial testimony, witnesses testified others at Caltrans also engaged in discriminatory or retaliatory behavior. As a result, we cannot say this aspect of the injunctive relief ordered was an abuse of discretion.

C.    *Sufficient Evidence Supports the Jury's Finding That the Challenged Adverse Employment Actions Were Partly Motivated by Legitimate Reasons*

Moinuddin seeks to undermine the prohibition on an award of damages by arguing there is insufficient evidence supporting the jury's finding that legitimate reasons partly motivated the complained of adverse employment actions taken by Caltrans. We consider the argument employing the substantial evidence standard of review. (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1188.) ""In determining whether a judgment is supported by substantial evidence, we may not confine our consideration to isolated bits of evidence, but must view the whole record in a light most favorable to the judgment, resolving all evidentiary conflicts and drawing all reasonable inferences in favor of the decision of the trial court. [Citation.] We may not substitute our view of the correct findings for those of the trial

29

court [or jury]; rather, we must accept any reasonable interpretation of the evidence which supports the [factfinder's] decision."' [Citations.]" (*Frank v. County of Los Angeles* (2007) 149 Cal.App.4th 805, 816.)

Moinuddin concedes the existence of adequate non-discriminatory reasons for his demotion. The question is therefore whether substantial evidence supports the same jury finding as to the "removed duties" (excusing Moinuddin from supervising Haddadeen) and the "fail[ure] to promote" (Moinuddin's unsuccessful application for promotions in other divisions after being demoted).[10] For the jury's award of no damages to have been proper, there must be adequate evidence supporting the finding that Caltrans would have taken these same adverse employment actions for only legitimate reasons. (*Harris*, *supra*, 56 Cal.4th 203, 239 [where employee supports FEHA claim by establishing an illegitimate criterion was a substantial factor in the adverse employment decision at issue, employer may avoid liability for damages by establishing it would have made the same decision without the wrongful motivation].)

Assuming for argument's sake that removal of Haddadeen from Moinuddin's chain of command was an adverse employment action, there is substantial evidence Caltrans would have removed Haddadeen from Moinuddin's chain of command for non-discriminatory and non-retaliatory reasons. Zaghari was

---

[10] Moinuddin asserts there is ambiguity in the jury's special findings given the "and/or" constructions, but we indulge all presumptions in favor of the correctness of the judgment and it is Moinuddin's burden as the appealing party on this issue to affirmatively demonstrate error. (See, e.g., *Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 299.)

30

aware there was friction between Haddadeen and Moinuddin (arising at least partly from the 2007 letter Moinuddin signed accusing Haddadeen of misdeeds). Zaghari testified he granted Haddadeen's request because of that friction (though Zaghari did not consider the 2007 letter, which he was not aware of at the time), but also because Haddadeen would be leaving the Division in two months and because Moinuddin was already directly working with the Senior TEs in Haddadeen's chain of command. Though Moinuddin asserts otherwise, Zaghari's testimony does, in fact, establish non-discriminatory or retaliatory reasons for removing Haddadeen from Moinuddin's supervision. The jury could have credited this testimony to conclude the decision to remove Haddadeen from Moinuddin's supervision was not solely spurred by discriminatory or retaliatory motives.

There is also substantial evidence Moinuddin would not have been promoted to the Principal position in either the Division of Design or of Project Management even absent a discriminatory or retaliatory motivation. As to the Division of Design, Moinuddin had not worked there since the 1990s, knew other applicants likely had more proficiency in the division than he did, and conceded others ranked higher in the interview process than he did. Regarding the position in the Division of Project Management, Moinuddin had only two years of experience in the division, had not qualified for an interview, and acknowledged other applicants may have been more qualified than he. Moinuddin argues Caltrans should have produced its own evidence addressing why Moinuddin was not selected for these positions, but the question before us is not whether better evidence could have been provided, but whether substantial

31

evidence was introduced.  Based on the foregoing, we conclude it was.[11]

### D.    *Attorney Fees*

Moinuddin appeals certain aspects of the trial court's attorney fees award.  Moinuddin was awarded fees pursuant to Government Code section 12965, which authorizes a court to award reasonable attorney fees to the prevailing party in a FEHA action.  (Gov. Code, § 12965, subd. (b).)  A trial court has discretion to reduce the amount of a fee award where a plaintiff achieves only limited success.  (*Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 249.)  Because we have curtailed the relief Moinuddin can permissibly obtain, we will remand the issue of attorney fees back to the trial court so that it may decide whether to award the same amount of fees or a different amount.

---

[11]    Because we conclude substantial evidence supported the jury's verdict, we need not address Caltrans' procedural argument that Moinuddin waived his right to seek a new trial for damages.

DISPOSITION

The award of declaratory relief, the injunction compelling Caltrans to refrain from violating FEHA, and the amount of the attorney fees award are ordered stricken from the judgment. In all other respects, the judgment is affirmed. The cause is remanded to the trial court with directions to enter an amended judgment consistent with our modifications and reflecting the court's determination of the appropriate amount of attorney fees. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

MOOR, J.